No. 00-152

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 278

DOUGLAS M. BURLESON,

Plaintiff and Respondent,

v.

SUZAN D. KINSEY-CARTWRIGHT,

GALE P. CARTWRIGHT, and FAY L.

HOFFMAN,

Defendants and Appellants.

APPEAL FROM: District Court of the Fourteenth Judicial District,

In and for the County of Musselshell,

The Honorable John R. Christensen, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Matthew J. Sisler, Attorney at Law, Missoula, Montana

For Respondent:

David Wagner, Crowley, Haughey, Hanson, Toole, & Dietrich, P.L.L.P.,

Billings, Montana

Submitted on Briefs: June 29, 2000
Decided: November 9, 2000

Filed:

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

¶1 This is an appeal from an order granting summary judgment in the Fourteenth Judicial District, Musselshell County. This case arose from a dispute regarding the existence of an easement across Defendants', Suzan D. Kinsey-Cartwright, Gale P. Cartwright, and Fay L. Hoffman, (hereinafter Kinsey-Cartwright) property. The Plaintiff, Douglas Burleson (Burleson), filed this action on June 5, 1998, to enjoin the Defendants from refusing him access to an easement across the Kinsey-Cartwright property. Both Plaintiff and Defendants moved for summary judgment. On September 3, 1999, the District Court filed its order granting Burleson summary judgment and denying Kinsey-Cartwright's motion for summary judgment. Kinsey-Cartwright appeals. We affirm the order of the District Court.

## BACKGROUND

¶2 This case originates from the sale, purchase, and subsequent subdivision of a ranch located in Musselshell County, formerly owned by Carl and Evelyn Eliason. The original ranch consisted of Section 29 and parts of Sections 31 and 32 of Township 7 North, Range 26 East, M.P.M., Musselshell County, containing approximately 1100 acres. In March and April 1972, a local investment group purchased the property, formed a corporation entitled Timber Tracts, Inc., and drafted a plat to divide the real property into equal parts for the purpose of resale as recreational and residential tracts.

¶3 Timber Tracts, Inc., was formally incorporated on April 26, 1972. The Eliason Ranch was transferred to Timber Tracts, Inc., by warranty deed dated May 20, 1972, and recorded with the Musselshell County Clerk and Recorder on May 23, 1972. Subsequently, Timber Tract, Inc., recorded a right-of-way easement with the Musselshell County Clerk and Recorder's office on August 14, 1972.

¶4 The original plat for Timber Tracts, Inc., included a series of roads connecting the subdivision tracts to U.S. Highway 87, which bordered the subdivision. The right-of-way easement filed described two graveled roads that would provide access from U.S. Highway 87 through the subdivision.

¶5 Individual tracts were to be serviced by lesser roads referred to as "summer access roads." Only the main roads described in the county right-of-way easement were to be graveled and constructed to specifications required for a county road. These roads became known as Ambush and Canyon. Approximately one-third of the subdivision tracts have direct access to these gravel roads. The other two-thirds of the tracts are provided access via a "summer access road" before connecting with one of the two main graveled roads built through the subdivision.

¶6 After purchasing the Eliason property in 1972, Timber Tracts, Inc., through its agents, immediately built the current access road system throughout the subdivision. When the investment group developed roads through the subdivision, culverts were installed for all roads, including summer access roads. The culvert system and subdivision roads, including summer access roads, were in place prior to the fall of 1972.

¶7 On October 19, 1972, Theodore J. Hoffman and Marie Hoffman purchased tracts Nos. 45/50 and 51 within the Timber Tracts, Inc., subdivision, more accurately described as Township 7 North, Range 26 East, M.P.M., Section 29: W½ SE¼ SW¼, SE¼ SE¼ SW¼. The contract for deed between Timber Tracts, Inc., and the Hoffmans describes the following easements and restrictions:

> Together with a perpetual easement to cross the road as now constructed in the S1/2 of Section 29, Township 7 North, Range 26 East, M.P.M., AND reserving to the grantor an easement for county roads and summer access roads as now constructed over and across said tract to a full width of 60 feet and an easement for all utilities.
>
> . . . .
>
> RESTRICTIONS: Said land shall not be occupied or used for any commercial or business purposes including any commercial cattle feeding, hog raising, poultry or any other animal; nor for any noxious or offensive activity and nothing shall be done or permitted to be done on said land which is a nuisance or might become a nuisance to the owner or owners of any surrounding land including the disposal of

trash and junk cars. All domestic animals must be fenced within the boundaries of said property.

(Emphasis added.)

¶8 Additionally, the Hoffmans' title insurance policy identified the following easement reservation: "Easements for summer access roads and for County Roads as now constructed over and across said lands, AND reserving to the vendor, its successors and assigns, a 60 foot easement over all roads and easement for utilities." On February 1, 1980, the Hoffmans recorded their special warranty deed to the property which included the same reservations as described in their contract and title insurance policy. The Hoffman tracts were subsequently transferred within the family several times pursuant to deeds and deeds of distribution. Ultimately on August 23, 1993, Fay Hoffman received full ownership of the property through a deed of distribution from the estate of her deceased husband Theodore Hoffman, "subject to reservations, restrictions and easements of record." Suzan Kinsey-Cartwright and her husband Gale Cartwright subsequently purchased the property by a contract for deed from Fay Hoffman, Kinsey-Cartwright's mother. The conveyancing documents by which Kinsey-Cartwright purchased the property stated that the property was subject to "visible easements, easements of record and rights of way." Kinsey-Cartwright inspected the property before she purchased it.

¶9 In March 1998 Douglas Burleson purchased a tract within the Timber Tracts, Inc., subdivision, lying east of the Kinsey-Cartwright tract. Burleson's property is more accurately described as "Township 7 North, Range 26 East, P.M.M. [sic], Section 29: SW¼ SW¼ SE¼ ." In order to access his property (tract 52), Burleson would travel the lower graveled county road (Canyon Road) within the subdivision. He would then travel over summer access roads through tracts 45/50 and tract 51 (all owned by Kinsey-Cartwright) to access his property. This summer access road, which stretches between Canyon Road and U.S. Highway 87, also provides the only access for several other tracts within the subdivision. In addition, Kinsey-Cartwright uses this summer access road to access her own year-round residence. Although theoretically Burleson could access his property from the summer access road via U.S. Highway 87, uncontroverted testimony indicated that this section of road was inaccessible for much of the year due to the steep angle of the road.

¶10 In attempting to access his property through the property of Kinsey-Cartwright, Burleson was required to cross several cattle guards and was often required to open and

close gates on the Kinsey-Cartwright property. In several conversations with Burleson, Kinsey-Cartwright informed him that the road was private, and that he must seek permission from her to access his property. Eventually, Kinsey-Cartwright informed Burleson that he must contact her lawyer regarding access to his property. Burleson sought legal counsel. Burleson and his counsel attempted to access Burlesons's property on May 15, 1998. A heated exchange ensued between counsel and Kinsey-Cartwright. Kinsey-Cartwright then informed Burleson that he would not be allowed access to the property without specific permission each time from her attorney. Burleson subsequently filed for permanent injunctive relief and other remedies. On September 8, 1998, Kinsey-Cartwright filed an answer and counterclaim. On February 26, 1999, Kinsey-Cartwright filed a motion for summary judgment. On April 7, 1999, Burleson filed a cross-motion for summary judgment. On September 3, 1999, the District Court entered an order granting summary judgment in favor of Burleson, and denying summary judgment to Kinsey-Cartwright. Kinsey-Cartwright appeals.

## STANDARD OF REVIEW

¶11 Our standard of review in appeals from summary judgment rulings is de novo. *Federated Mut. Ins. Co. v. Anderson*, 1999 MT 288, ¶ 55, 297 Mont. 33, ¶ 55, 991 P.2d 915, ¶ 55; *Motarie v. Northern Montana Joint Refusal Disposal Dist.* (1995), 274 Mont. 239, 242, 907 P.2d 154, 156; *Mead v. M.S.B., Inc.,* (1994), 264 Mont 465, 470, 872 P.2d 782, 785. When we review a district court's grant of summary judgment, we apply the same criteria as the district court, based on Rule 56, M.R.Civ.P. *Federated*, ¶ 55. Summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Motarie*, 274 Mont. at 242, 907 P.2d at 156. We look to the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits to determine the existence or nonexistence of material fact. *Motarie*, 274 Mont. at 242, 907 P.2d at 156.

## DISCUSSION

¶12 Did the District Court properly grant summary judgment to plaintiff Douglas Burleson, and hold that a valid easement attached to his property?

¶13 Kinsey-Cartwright makes various overlapping arguments attacking the creation of the easement, contending that the easement did not pass to subsequent purchasers, that the easement was somehow extinguished and that she was not provided notice of the

easement. None of her arguments have merit. Burleson counters that the granting document is clear on its face and, therefore, summary judgment as to the easement's existence and nature was properly entered by the District Court.

¶14 An easement is a nonpossessory interest in land; a right which one person has to use the land of another for a specific purpose or a servitude imposed as a burden upon the land. *Ruana v. Grigonis* (1996), 275 Mont. 441, 447, 913 P.2d 1247, 1251; *Kuhlman v. Rivera* (1985), 216 Mont. 353, 358, 701 P.2d 982, 985. An easement cannot be created, granted, or transferred except by operation of law, by an instrument in writing, or by prescription. *Ruana,* 275 Mont. at 447, 913 P.2d at 1251; *Wild River v. Board of Trustees* (1991)*,* 248 Mont. 397, 400, 812 P.2d 344, 346.

¶15 Kinsey-Cartwright argues that no easement was ever created, and Burleson should be prohibited from crossing her land. Burleson contends that an easement by reservation was created by the original documents of conveyance when the Eliason ranch was subdivided and sold by parcel. The District Court found that an easement by reservation was created by the original documents. We agree.

a. Creation of an Easement

¶16 An easement by reservation is created by written documents of conveyance. *Ruana*, 275 Mont. at 447, 913 P.2d at 1251; *Halverson v. Turner* (1994), 268 Mont. 168, 172, 885 P.2d 1285, 1288. Montana recognizes servitudes that attach to the land. Section 70-17-101, MCA. A servitude or burden such as a right-of-way that attaches to other land as an incident or appurtenance is called an easement. Section 70-17-101(4), MCA. The land to which an easement attaches is the dominant tenement. The land over which the easement attaches is the servient tenement. Section 70-17-103, MCA. An easement reserved with the dominant tenement is retained for subsequent purchasers. *Michaelson v. Wardell* (1980), 186 Mont. 278, 280, 607 P.2d 100, 101. A transfer of real property passes all easements attached to it. Section 70-20-308, MCA. Thus, the valid conveyance of real property conveys all easements that attach to the property. *Ludwig v. Spoklie* (1996), 280 Mont. 315, 317, 930 P.2d 56, 57.

¶17 It is evident that Timber Tracts, Inc., intended to provide legal access to all tracts within the original subdivision. To accomplish its goal, it developed two main all weather graveled roads, together with a series of ungraveled "summer access roads" to provide access to all of the subdivision's tracts. Timber Tracts, Inc., included clear language

reserving an easement for the road system in the instruments of conveyance. Thus a valid easement was created.

¶18 Kinsey-Cartwright argues that no easement exists, but even if the easement was properly created when the subdivision originated, it did not attach to the tracts that were subsequently transferred. This ignores Montana easement law. An easement attaches to property when the dominant tenement is partitioned or subdivided. The easement is apportioned according to the division of the dominant tenement, as long as it does not increase the burden on the servient tenement. Section 70-17-107, MCA. Tracts 45/50 and 51 (the Kinsey-Cartwright property) were conveyed by Timber Tract, Inc., to the Hoffmans with the reservation "for an easement for county roads and summer access roads as now constructed over and across the said tract to a full width of 60 feet and an easement for all utilities." The special warranty deed, recorded on February 1, 1980, and the ancillary conveyancing documents all contained specific language expressly reserving the easement. Thus, when Timber Tracts, Inc., conveyed the property to the Hoffmans, Kinsey-Cartwright's predecessor in title, the summer access roads were clearly defined right-of-ways that were easements that attached to the remaining parcels in the subdivision. *See* § 70-17-101, MCA. The servient tenement was Hoffmans' (now Kinsey-Cartwright's) property. When Timber Tracts, Inc., partitioned and sold the dominant tenement in separate parcels to different persons, subsequent purchasers such as Burleson acquired the right to use the easement appurtenant to the property. *See* § 70-17-107, MCA.

   b. Notice of Easement

¶19 Kinsey-Cartwright argues that she had no notice of the easement on her property. She also argues that the plat should have been recorded with the county clerk and recorder. Burleson contends that Kinsey-Cartwright had both constructive and actual notice of the easement. The District Court found that Kinsey-Cartwright had sufficient notice of the easement. We agree.

¶20 Each purchaser of land in the subdivision received notice of the easements through the specific language in the contracts, deeds, and title insurance. The easement was specifically defined in the original Hoffman deed which was properly recorded and, therefore, provided Kinsey-Cartwright with constructive notice. Fay Hoffman acquired her husband's interest in the property by deed which stated that the property was "SUBJECT TO reservations, restrictions and easements of record." Likewise, Kinsey-Cartwright's deed stated that her interest was subject to "visible easements, easements of record, and

rights-of-way." The previous deeds of record as well as her deed provided Kinsey-Cartwright adequate constructive notice of the easement.

¶21 In addition, Kinsey-Cartwright had actual notice of the existence of an easement when she inspected the property before purchase. Undisputed evidence in the record indicates that all roads, including summer access roads, were developed and in place before any tract of land within the subdivision was sold. Consequently, an onsite inspection of property before purchasing the land put Kinsey-Cartwright on actual notice of the easements through her property. In addition, prior to the commencement of litigation, it is undisputed that Kinsey-Cartwright herself, in a letter to the residents of neighboring property, expressly recognized that the summer access roads on her property provided easements for the landowners beyond her property.[1]

¶22 As to Appellant's protestations regarding the lack of recording of the plat, we note that the platting and road construction took place prior to the legislative revisions to the Montana Subdivision and Platting Act (Section 76-3-101, MCA), which took effect on July 1, 1973, and thus, Timber Tracts, Inc., was exempt from the requirement that all plats be filed with the local clerk and recorder. *See* §§ 76-3-301 and -206, MCA.

### c. Definition of Summer Access Road

¶23 Kinsey-Cartwright contends that the term "summer access road" which was used in the documents of conveyance merely describes the time of year that the roads may be utilized by the dominant tenement. Burleson argues that "summer access road" is a nomenclature for the type of road in the subdivision; one that has not been maintained to county road standards yet is still accessible throughout the year. We agree with the District Court's conclusion that documents are sufficiently clear and indicate that the summer access roads were intended to be available to subdivision owners for full-time access to their property.

### d. Extinguishment or Abandonment

¶24 Kinsey-Cartwright further argues that, if an easement existed at the time of creation of the subdivision, the easement has been extinguished or abandoned. An easement can be extinguished only if the servitude owner and servient tenement owner are the same person, the servient tenement is destroyed, the servitude is acquired by enjoyment, or the owner of the servitude performs an act or assents to an act which is incompatible with its nature or

exercise. Section 70-17-111, MCA.

¶25 Kinsey-Cartwright presents no evidence to support this claim. The owner of the servitude and the servient tenement are not the same person. She alleges that the easement was extinguished because parcels 45/50 and 51 are adjacent and, therefore, the easement crossing them does not benefit the other parcel. There is no unity of ownership here. Even though her parcels are adjacent, the easement still benefits Burleson and Kinsey-Cartwright's neighbors. The servient tenement has not been destroyed. There is no evidence that the owner of the servitude performed or assented to an act which was incompatible with the nature of the easement. Thus she has not satisfied the elements of § 70-17-111, MCA. Furthermore, she does not properly allege or satisfy the necessary elements of extinguishment through adverse use for the full statutory period of five years. *See Halverson*, 268 Mont. at 174, 885 P.2d at 1290.

e. Alternative easement argument

¶26 Kinsey-Cartwright argues that Burleson does not have an easement across her property because he can access his property via an "alternative easement" that begins at U. S. Highway 87. Actually, the easement she is referring to is simply the eastern portion of the easement at issue. Her argument actually supports Burleson's position. If he has an easement for U.S. Highway 87, he also has the right to use the complete length of the easement including the section that extends through Kinsey-Cartwright's property.

¶27 On the basis of the record presented, we conclude the District Court properly granted summary judgment to Burleson, permanently enjoining Kinsey-Cartwright from obstructing the easement.

Affirmed.

/S/ JIM REGNIER

We Concur:

/S/ J. A. TURNAGE

/S/ JAMES C. NELSON

/S/ WILLIAM E. HUNT, SR.

## /S/ W. WILLIAM LEAPHART

1. In a letter dated March 16, 1998, and forwarded to Sandy and Paul Smith, Kinsey-Cartwright stated, "The county's portion of Canyon Road on our property extends only to our quarter-section line, which is part way up the hill on the road that goes through our property. From there on, Canyon Road is a private road, which is an easement for the landowners beyond our property."