No. 02-022

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 247

EARL D. TAYLOR and
EVELYN E. TAYLOR,

      Plaintiffs and Appellants,

  v.

MONTANA POWER COMPANY,

      Defendant and Respondent.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
                    In and for the County of Yellowstone,
                    The Honorable Russell Fagg, Judge presiding.

COUNSEL OF RECORD:

      For Appellants:

      Thomas E. Towe, Towe, Ball, Enright, Mackey & Sommerfeld, Billings,
Montana

      For Respondent:

      Michael P. Manion, The Montana Power Company, Butte, Montana

Submitted on Briefs:  May 2, 2002

Decided:  November 14, 2002

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1    Earl and Evelyn Taylor (Taylors) filed a complaint in the Thirteenth Judicial District Court alleging that the Montana Power Company (MPC) failed to gain permission to install electrical power lines below and above their property. In its answer, MPC asserted, among other defenses, that it had established prescriptive easements for the underground and overhead power lines and accompanying equipment. Following MPC's motion for summary judgment, the District Court concluded MPC had established prescriptive easements on Taylors' property, and granted judgment in MPC's favor. Taylors appeal from the District Court's order of summary judgment. We affirm.

¶2    The sole issue presented on appeal is whether the District Court erred when it concluded MPC established prescriptive easements over Taylors' properties for its underground and overhead power lines and accompanying equipment.

### FACTUAL AND PROCEDURAL BACKGROUND

¶3    Between 1964 and 1973, Taylors purchased several lots in the Sun Valley Subdivision, near Billings, Montana. They purchased Lot 5 of Block 6 in 1964, where they built their house and still reside. Relevant to this matter, Taylors also purchased Lots 5, 6, and 7 of Block 8, and Lot 8 of Block 6 in 1971, and Lots 3 and 4 of Block 8 in 1973. Collectively, Lots 3, 4, 5, 6, and 7, of Block 8 (hereinafter, Parcel 1) are positioned across the street from Taylors' home. Lot 8 of Block 6 (hereinafter, Parcel 2) is positioned behind Taylors' home on Lot 5.

¶4      In 1964, MPC installed a lift pole and accompanying overhead power line on Parcel 2, which Taylors later purchased in 1971.  In May of 1978, MPC installed an underground power line and two above-ground padmount transformers on Parcel 1.  At the time, Parcel 1 was owned by Taylors, but sat vacant.  According to Earl Taylor's (Earl) testimony, and as depicted in photographs submitted by both parties, numerous materials were stored on Parcel 1, having been placed there by either Earl or his neighbors.  Some of the objects had been on the property for at least ten years.

¶5      Taylors allege they first became aware of the underground lines on Parcel 1 in early 1997, when they inquired with MPC about converting their overhead power service to underground service.  After inspecting the property in response to the request to convert, an MPC employee informed Taylors that there were two transformers and an accompanying underground line already in place.  In April of 1997, MPC sent a letter requesting that Taylors sign an enclosed easement agreement, thus granting MPC and other utility companies a common easement.  Taylors refused to execute the easement.  At no time has there been a recorded easement in MPC's favor for either the overhead lines or underground lines and transformers.

¶6      On April 7, 1998, Taylors sent a letter to MPC protesting the location of the underground lines and transformers, which, they argued, serviced other lots not owned by them.  In the letter, Taylors asserted that even if MPC had requested permission to install the lines and transformers, they would not have given MPC an easement to service lots other than those owned by Taylor.

3

¶7    On December 29, 2000, Taylors filed a Complaint against MPC, alleging trespass, wrongful occupation of real property, conversion, inverse condemnation, and unjust enrichment. MPC filed its Answer on February 8, 2001, asserting several defenses, including an assertion that it had established prescriptive easement as to the underground power lines and two transformers on Parcel 1, and also a prescriptive easement for the overhead line and pole located on Parcel 2. Ultimately, MPC filed a Motion for Summary Judgment on its prescriptive easements defense, and in the alternative, on its assertion that the Statutes of Limitation had passed on Taylors' claims.

¶8    Following oral arguments, the District Court entered its Order and Memorandum on November 6, 2001. The District Court concluded MPC had established, by clear and convincing evidence, the necessary elements of prescriptive easement for both the overhead and underground power lines. Accordingly, the District Court granted summary judgment to MPC and dismissed Taylors' complaint. It is from this judgment that Taylors appeal.

## STANDARD OF REVIEW

¶9    We review appeals from summary judgment rulings *de novo*. *Hitshew v. Butte/Silver Bow County*, 1999 MT 26, ¶ 14, 293 Mont. 212, ¶ 14, 974 P.2d 650, ¶ 14 (citing *Axtell v. M.S. Consulting*, 1998 MT 64, ¶ 21, 288 Mont. 150, ¶ 21, 955 P.2d 1362, ¶ 21). We apply the same summary judgment evaluation, based on Rule 56, M.R.Civ.P., as the district court. *Hitshew*, ¶ 14 (citing *Bruner v. Yellowstone County* (1995), 272 Mont. 261, 264, 900 P.2d 901, 903). In *Bruner*, we set forth our inquiry:

4

The movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. Having determined that genuine issues of fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. We review the legal determinations made by a district court as to whether the court erred.

*Bruner*, 272 Mont. at 264-65, 900 P.2d at 903 (citations omitted).

## DISCUSSION

¶10 Did the District Court err when it concluded MPC established prescriptive easements over Taylors' properties for its underground and overhead power lines and accompanying equipment?

¶11 An easement is a nonpossessory interest in land that gives a person the right to use the land of another for a specific purpose. *Ray v. Nansel*, 2002 MT 191, ¶ 22, 311 Mont. 135, ¶ 22, 53 P.3d 870, ¶ 22 (citations omitted). An easement by prescription is created by operation of law. *Hitshew*, ¶ 16 (citing *Rettig v. Kallevig* (1997), 282 Mont. 189, 193, 936 P.2d 807, 810). To establish a prescriptive easement, a claimant must establish open, notorious, continuous, uninterrupted, exclusive and adverse use for five years. *See Ray*, ¶ 22 (citing *Renner v. Nemitz*, 2001 MT 202, ¶ 13, 306 Mont. 292, ¶ 13, 33 P.3d 255, ¶ 13); and *Hitshew*, ¶ 16 (citation omitted). The claimant must prove these elements by clear and convincing evidence. *Ray*, ¶ 22 (citing *Renner*, ¶ 13). Finally, a claimant's failure to prove any element for the full prescriptive period is fatal to the entire claim. *Ray*, ¶ 23 (citation omitted).

5

¶12 Taylors' first contention on appeal is that the District Court erred in concluding MPC's use of Parcel 1 was open and notorious. Therefore, for the purposes of this appeal, we will address only the merits of that element of MPC's prescriptive easement claim with respect to the underground line and transformers on Parcel 1. Taylors' second contention--with respect to both Parcels--is that in addition to establishing those prescriptive easement elements listed above, MPC was required to show either color of title under § 70-19-407, MCA, or an enclosure or cultivation as required under § 70-19-410, MCA. We will address the open and notorious element as to the underground lines and transformers on Parcel 1, first.

¶13 When establishing a prescriptive easement, use is "open and notorious" when it gives the landowner actual knowledge of the claimed right, or is of such a character as to raise a presumption of notice. *Ray*, ¶ 26 (citing *Albert v. Hastetter*, 2002 MT 123, ¶ 21, 310 Mont. 82, ¶ 21, 48 P.3d 749, ¶ 21; and *Hitshew*, ¶ 17). *See also, Mildenberger v. Galbraith* (1991), 249 Mont. 161, 167, 815 P.2d 130, 134-35 ("It has long been established that an open and notorious possession is such that it will give the owner of the property right 'either actual knowledge of the hostile claim, or be of such a character as to raise a presumption of notice or be so patent that the owner could not be deceived.' ") (citing *Collins v. Thode* (1918), 54 Mont. 405, 411-12, 170 P. 940, 941).

¶14 In concluding that the transformers and underground lines were sufficiently "open and notorious" to establish a prescriptive easement, the District Court applied the "prudent man test" from *O'Connor v. Brodie* (1969), 153 Mont. 129, 139, 454 P.2d 920, 925-26 (concluding that plaintiffs possessed a prescriptive easement for the underground water line

6

on defendants' property). The District Court concluded that the information supplied in the parties' pleadings, particularly the photographs submitted by both parties, clearly showed the visibility of the transformers on Parcel 1. The court also noted that MPC has continuously serviced the transformers since they were installed in 1978. The District Court concluded that a prudent property owner engaging in even a casual inspection of his property would have discovered the transformers.

¶15    Taylors argue that the District Court erred in making this conclusion, contending that such a conclusive presumption of knowledge should not be recognized, and assert they did not have actual notice of the underground lines until 1997. Taylors assert the court erroneously relied on *O'Connor* for the "prudent man test," contending that the test was dictum, and that *O'Connor* was distinguishable because the prescriptive right in that case was perfected against the defendants' predecessors in interest. *See O'Connor*, 153 Mont. at 139, 454 P.2d at 926.

¶16    Plaintiffs in *O'Connor* sought to enjoin defendants from interfering with their use of an underground water line that traversed defendants' land. The water line at issue ran from an intake area that was twenty feet in diameter and enclosed by a five-foot wooden fence, and plaintiffs or their predecessors in interest had installed, regularly maintained and repaired the water line since at least 1912. On appeal, defendants argued that plaintiffs had failed to establish open and notorious use of the underground water line. In response to this assertion, we asked, "in what further adverse manner could plaintiffs occupy defendants' land with an underground water line?" *O'Connor*, 153 Mont. at 138, 454 P.2d at 925. We then set out the

7

"prudent man test," relying on *Brannon v. Lewis and Clark County* (1963), 143 Mont. 200, 205, 387 P.2d 706, 709, and concluded that a casual inspection of the property would have disclosed the enclosure and intake system which were attached to the underground water line, concluding that observation of those objects would lead a prudent man to inquire. *O'Connor*, 153 Mont. at 139, 454 P.2d at 925-26. We concluded it was immaterial whether defendants had actual knowledge of the underground water line, since plaintiffs had acquired a prescriptive right prior to the date defendants acquired their property, noting that once established, prescriptive title is not divested by subsequent transfers of a servient estate. *O'Connor*, 153 Mont. at 139, 454 P.2d at 926.

¶17    Relying on *O'Connor*, we again applied the "prudent man test" in *Riddock v. City of Helena* (1984), 212 Mont. 390, 687 P.2d 1386. There, we held that the City of Helena established a prescriptive easement for a water line constructed underneath Riddock's property, even though it was installed before Riddock purchased the parcel. We concluded that the water line's existence was open and notorious because the pipeline was ostensibly staked out, constructed during daylight hours, and there was nothing more the City could have done to put the property owner on notice of its use. Accordingly, we concluded those circumstances were sufficient to put the property owner on inquiry. *Riddock*, 212 Mont. at 397, 687 P.2d at 1389-90.

¶18    On appeal, Taylors attempt to distinguish *O'Connor* and *Riddock* by arguing that those decisions focused on subsequent purchasers who failed to properly inspect the property prior to buying, noting that here, Taylors were current owners of Parcel 1 when the underground

8

line and transformers were installed. While both *O'Connor* and *Riddock* involved a prescriptive easement enforced against a subsequent purchaser, neither case turned on the parties' positions as subsequent buyers. Rather, our inquiry focused not on when the easement was perfected, but rather how it was perfected; in both cases, this Court discussed the above-ground physical characteristics and circumstances that established the open and notorious nature of the water lines. Significantly, in *Riddock* we noted that the "prudent man test" should not be applied to Riddock, as he had argued, but rather to his predecessor in interest, "against whom the City's prescriptive easement was obviously perfected." *Riddock*, 212 Mont. at 397-98, 687 P.2d at 1390. Therefore, the proper application of the "prudent man test" is to the landowner against whom the prescriptive easement was perfected. Here, Taylors were the landowners against whom MPC sought to perfect its easements by prescription.

¶19    In regards to the open and notorious nature of the transformers, Taylors appear to also argue that given their work obligations, application of the "prudent man test" in this case is oppressive. We do not agree. While the couple did work away from home during some parts of the year, it is clear from their deposition testimony that around the time the underground line and transformers were placed, and for the following twenty years, Taylors were living on a lot directly across the street from where MPC installed and maintained the underground line and transformers.

¶20    We conclude that in light of the photographs, which clearly show the visibility of the transformers, and given that Taylors owned Parcel 1 during the time the transformers and

9

underground lines were installed and subsequently maintained, the opportunity to notice the presence of the transformers and inquire as to their purpose should be imputed to them, just as it was to the predecessors in interest in both *O'Connor* and *Riddock*.

¶21 Accordingly, we cannot find fault with the District Court's application of *O'Connor*, and therefore conclude the District Court properly relied on and applied the "prudent man test" when it concluded that the existence of the transformers was sufficient to prompt further inquiry into the nature of the objects on Taylors' Parcel 1.

¶22 We now consider Taylors' second contention on appeal. Taylors assert that, in addition to establishing the necessary elements for the prescriptive easements--open, notorious, exclusive, adverse, continuous and uninterrupted use for five years--MPC was also required to show either color of title under § 70-19-407, MCA, or an enclosure or cultivation as required under § 70-19-410, MCA, in order to establish prescriptive easements over both Parcels. We find no merit in this assertion.

¶23 We recognize that in claims for *adverse possession*, color of title or evidence of enclosure or cultivation are required under Montana Code. *See* §§ 70-19-407 through -410, MCA. Further, it is true that the establishment of prescriptive easements and adverse possession involve similar requirements. However, the nature of the interests created or acquired are significantly different; a successful adverse possession claim results in acquisition of a possessory estate, while a successful prescriptive easement claim entitles the claimant to only a specific use authorized by the servitude. *See* Restatement (Third) of Property: Servitudes, § 2.17 (a) (2000). We previously recognized that this "important

10

distinction between an easement and a fee simple is that the former describes the right to a use of land which is specific or restrictive in nature, while the latter is the grant of title to the land itself." *Park County Rod & Gun Club v. Department of Hwys.* (1973), 163 Mont. 372, 377, 517 P.2d 352, 355.

¶24   Since an easement is a mere right to use and neither a right to secure title, nor a possessory interest, we reject Taylors' assertion that color of title should be required to establish a prescriptive easement. *See*, *Jefferson v. McCauley Ranches*, 1999 MT 333, ¶ 19, 297 Mont. 392, ¶ 19, 994 P.2d 11, ¶ 19 (easement is a grant of use and not a grant of title to the land). Moreover, we have consistently noted that an easement cannot be created, granted, or transferred except by operation of law, by an instrument in writing, or by prescription. *Burleson v. Kinsey-Cartwright*, 2000 MT 278, ¶ 14, 302 Mont. 141, ¶ 14, 13 P.3d 384, ¶ 14 (citing *Ruana v. Grigonis* (1996), 275 Mont. 441, 447, 913 P.2d 1247, 1251; and *Wild River Adventures v. Bd. of Trustees* (1991), 248 Mont. 397, 400, 812 P.2d 344, 346) (emphasis added). Creation of an easement by prescription has been repeatedly recognized in Montana as a separate and distinct non-possessory right from that acquired via a written instrument.

¶25   Nor do we agree that in the absence of a written instrument, establishing a prescriptive easement requires either enclosures or cultivation, under § 70-19-410, MCA. This section provides:

> For the purpose of constituting an adverse possession by a person claiming title not founded upon a written instrument, judgment, or decree, land is deemed to have been possessed and occupied in the following cases only:
> (1) where it has been protected by a substantial enclosure;
> (2) where it has been usually cultivated or improved.

11

Section 70-19-410, MCA. There is no mention of easements in this section. The plain language clearly indicates that this provision applies only to claims by adverse possession. Thus, the District Court correctly concluded that no Montana case advances or supports Taylors' proposal to require either color of title or enclosures or cultivation for the establishment of prescriptive easements.

¶26 The District Court did not err when it concluded that MPC had established prescriptive easements for its underground and overhead power lines and accompanying equipment, over Parcels 1 and 2. Accordingly, the District Court's judgment is affirmed.

/S/ PATRICIA COTTER

We Concur:

/S/ JAMES C. NELSON
/S/ JIM REGNIER
/S/ JIM RICE
/S/ W. WILLIAM LEAPHART