

DA 09-0100

## IN THE SUPREME COURT OF THE STATE OF MONTANA

### 2009 MT 333

SCOTT SLAUSON,

      Plaintiff, Appellant and Cross-Appellee,

v.

MAROZZO PLUMBING AND HEATING, LLC,

      Defendant, Appellee and Cross-Appellant.

APPEAL FROM:    District Court of the Nineteenth Judicial District,
In and For the County of Lincoln, Cause No. DV 08-046
Honorable C. B. McNeil, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Amy N. Guth, Attorney at Law, Libby, Montana

      For Appellee:

            Heather McDougall, Attorney at Law, Troy, Montana

                      Submitted on Briefs:  September 16, 2009

                                Decided:  October 13, 2009

Filed:

                  _____
                             Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1      Scott Slauson appeals, and Marozzo Heating and Plumbing, LLC ("Marozzo")

cross-appeals, from the order of the Nineteenth Judicial District Court, Lincoln County,

granting in part and denying in part the parties' summary judgment motions. We affirm.

## BACKGROUND

¶2      Referring to the diagram below, this case concerns a prescriptive easement over

Tract B (Slauson's north property) in favor of Tract A (Marozzo's property). Slauson

also owns Tract C (Slauson's south property). These properties are situated along U.S.

Highway 2 on the southeastern outskirts of Libby, Montana.



¶3    The prescriptive easement over Tract B was established prior to Marozzo's acquisition of Tract A. Before Marozzo, Tract A was owned by Neil Bertelsen and Phyllis A. Bertelsen as trustees of the Bertelsen Family Trust ("Bertelsen"). In 1987, Bertelsen leased the property to Amerigas (which was managed by Neil Bertelsen's son-in-law). During its lease, Amerigas constructed or placed a number of improvements on Tract B, including fixtures and a driveway/parking lot. In addition, Bertelsen installed some landscaping (railroad ties, shrubs, and washed rock) on Tract B in the mid-1990s. Amerigas leased Tract A from June 1987 to August 2007, when it terminated the lease and vacated the premises. Bertelsen then sold Tract A to Marozzo in December 2007.

¶4    Meanwhile, Slauson purchased Tract C in October 2002. While researching the purchase of this property, he noticed that the land constituting Tract B was not part of Bertelsen's property. Rather, it belonged to Alma Edwards, who owned a large tract of land on the opposite side of Highway 2. Apparently, Tract B had been split off from Edwards' larger tract when the highway was constructed. Edwards, however, was not aware that she owned Tract B. Moreover, the property had never been separately identified by deed and was not on the Lincoln County tax rolls. To avoid the possibility of a property tax liability, Edwards transferred Tract B to Slauson in July 2003.

¶5    Slauson then had Tract B surveyed. The survey showed that Amerigas was using Tract B for its customers to access the Amerigas office and to park. In addition, the survey showed that several of the improvements which Amerigas had constructed, including a portion of two chain-link fences and a "control box unit" protected by three concrete posts, were encroaching on Tract B.

3

¶6     Slauson contacted the Montana Department of Transportation, which discharged its easement over Tract B, and he contacted the Lincoln County Clerk and Recorder's Office, which placed the property back on the tax rolls. He then approached Amerigas and Bertelsen and offered to lease Tract B to Bertelsen. Bertelsen, however, claimed a right to continue using the property.

¶7     Slauson thus filed suit in December 2004 against Bertelsen (but not Amerigas) to enforce his property rights and recover compensation and damages. Bertelsen responded that he had acquired Tract B through adverse possession or that he had acquired a prescriptive easement allowing Amerigas to use Tract B. The District Court agreed with Bertelsen's latter theory. In its November 2005 Findings of Fact, Conclusions of Law, and Judgment, the court concluded that "Bertelsen and Amerigas have used [Tract B] in an open, notorious, exclusive, adverse, continuous, and uninterrupted manner since 1987" and, thus, that "[t]he Bertelsens and its lessee, Amerigas, have established a prescriptive easement to maintain the improvements and to transact Amerigas's business" on Tract B. The court ruled that the easement was limited in scope to the uses (ingress, egress, and customer parking) and encroachments which existed as of December 2004, but that Bertelsen and Amerigas were entitled "to maintain the property (snow plowing, etc.) as necessary to facilitate the uses which they have acquired the right herein to continue."

¶8     This Court affirmed in *Slauson v. Bertelsen Family Trust*, 2006 MT 314, ¶ 23, 335 Mont. 43, 151 P.3d 866. We concluded that "Bertelsen . . . established the elements necessary to acquire a prescriptive easement of [Tract B], including that the use was open and notorious and adverse." *Slauson*, ¶ 19. We thus "affirm[ed] the District Court's

4

determination that Bertelsen has established a prescriptive easement to use Slauson's property for an access and parking lot, and agree[d] with the District Court's pronouncement that the easement is limited to these existing uses." *Slauson*, ¶ 23.

¶9 As noted, Bertelsen sold Tract A to Marozzo in December 2007. Shortly thereafter, a dispute arose between Slauson and Marozzo concerning the use of Tract B. Slauson ultimately commenced the instant action against Marozzo in February 2008, asserting that Marozzo had trespassed on and used Slauson's property "in ways not authorized by law," including piling snow and placing equipment in such a manner as to interfere with Slauson's enjoyment of his property. Marozzo countersued for interference with the scope of the easement. Marozzo claimed that it had a legal right to use Tract B, that it was entitled to use the property in the same manner as Amerigas and Bertelsen had used it, and that it had not exceeded the easement's scope. Marozzo also asserted a claim for conversion, alleging that Slauson had wrongfully removed landscaping timbers and rock from Tract B. Marozzo requested costs and attorney's fees.

¶10 The parties filed cross-motions for summary judgment. Relying on *Leichtfuss v. Dabney*, 2005 MT 271, 329 Mont. 129, 122 P.3d 1220, Slauson argued that the prescriptive easement had been created through Amerigas's use of Tract B, that Amerigas had been a lessee of Tract A, and that an easement created in favor of an estate less than a fee simple (such as a lease) terminates when that estate ends. The District Court, however, concluded that the "identical legal issues" and the final judgments rendered in *Slauson* were dispositive here. The court then reasoned that Marozzo was "in privity" with Bertelsen and that the easement over Tract B had passed to Marozzo with the sale of

Tract A. The court awarded Marozzo $418.60 for the landscaping Slauson had removed from Tract B, awarded Slauson $430.00 for the costs of removing snow piled by Marozzo on Slauson's property south of the area subject to the easement, but denied Marozzo's request for costs and attorney's fees.

## ISSUES

¶11    Slauson presents the following issue on appeal: Did the easement over Tract B survive the extinguishment of Amerigas's leasehold? In addition, he asserts, essentially as an afterthought at the end of his opening brief, that the District Court "erred in ordering Slauson to pay damages to Marozzo for removal of personal property abandoned by Amerigas." However, he presents no argument, with citation to authority, in support of this assertion, and we therefore will not consider it. *See Marx v. Belgrade Volunteer Firefighters Relief Assn.*, 2008 MT 410, ¶¶ 12-13, 347 Mont. 256, 198 P.3d 247.

¶12    Marozzo presents the following cross-appeal issue: Should Marozzo be awarded attorney's fees? In addition, Marozzo asserts in its Summary of the Argument that "Marozzo is not responsible for the cost of removing the snow piles since it is within the established scope of the easement." Yet, Slauson filed an affidavit (with attached documentation) in the District Court which established that Marozzo placed the snow piles outside the area subject to the easement, that the snow piles prevented access between Slauson's north and south properties (Tracts B and C, respectively), and that it cost him $430.00 to remove the snow. And as the District Court noted, Marozzo did not refute this amount or the location of the piles. Likewise on appeal, Marozzo utterly fails to show that the District Court's analysis was in error. Marozzo asserts that the easement

6

"included snow piling," but Marozzo does not address the fact that the piles were placed outside the area subject to the easement. Marozzo simply offers the rather flippant observation that "Slauson could have let the snow piles melt rather than intentionally incurring costs." Thus, Marozzo having failed to present an appropriate argument in support of its position, we will not consider this matter any further. *Marx*, ¶¶ 12-13.

## STANDARD OF REVIEW

¶13 We review de novo a district court's ruling on a motion for summary judgment, applying the criteria set forth in M. R. Civ. P. 56. *Arnold v. Yellowstone Mountain Club, LLC*, 2004 MT 284, ¶ 12, 323 Mont. 295, 100 P.3d 137. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M. R. Civ. P. 56(c). Where the material facts are undisputed, the court must simply identify the applicable law, apply it to the uncontroverted facts, and determine who prevails. *See Corporate Air v. Edwards Jet Center*, 2008 MT 283, ¶ 28, 345 Mont. 336, 190 P.3d 1111.

## DISCUSSION

¶14 *Issue 1. Did the prescriptive easement over Tract B survive the extinguishment of Amerigas's leasehold?*

¶15 Slauson contends that the easement over Tract B ceased to exist when Amerigas's lease of Tract A ended. He argues that Amerigas established the requisite elements of a prescriptive use and that a prescriptive easement established by a lessee terminates at the

7

end of the leasehold. He also argues that the easement established by Amerigas was in gross and that an easement in gross terminates with the estate that benefitted from it.

¶16 Addressing Slauson's second point first, we do not agree that the easement was in gross. An easement—which is a nonpossessory interest in land that gives a person the right to use the land of another for a specific purpose—may be "appurtenant" or "in gross." *Taylor v. Montana Power Co.*, 2002 MT 247, ¶ 11, 312 Mont. 134, 58 P.3d 162; *Blazer v. Wall*, 2008 MT 145, ¶ 24, 343 Mont. 173, 183 P.3d 84. An easement appurtenant is one that benefits a particular parcel of land, i.e., it serves the owner of that land and passes with the title to that land. The benefited parcel is known as the dominant tenement or estate, and the burdened parcel is termed the servient tenement or estate. *Blazer*, ¶ 24. An easement in gross, by contrast, benefits the holder of the easement personally, i.e., not in connection with his or her ownership or use of a particular parcel of land. Thus, with an easement in gross, no dominant tenement exists and the easement right does not pass with the title to any land. *Blazer*, ¶ 24.

¶17 As we recently explained in *Broadwater Development, LLC v. Nelson*, 2009 MT 317, 352 Mont. 401, ___ P.3d ___, we determine whether an expressly created easement is appurtenant or in gross based on applicable statutory provisions (e.g., §§ 70-17-101 and -102, MCA) and "the intention of the parties as ascertained from the language of the instrument and aided, if necessary, by the situation of the properties involved, the objective circumstances existing at the time of execution, and the purpose to be accomplished by the easement." *Broadwater Development*, ¶ 34. Here, because we are considering a prescriptive easement, as opposed to an express easement, there is no

8

instrument to examine, and we must look instead to the situation of the properties involved, the purpose to be accomplished by the easement, and the nature of the enjoyment by which it was acquired. *See* § 70-17-106, MCA ("The extent of a servitude is determined by the terms of the grant or *the nature of the enjoyment by which it was acquired*." (emphasis added)); *cf. Leichtfuss*, ¶ 42 (because the easement at issue had been created by prescriptive use, there were no written terms from which we could discern the parties' intent; thus, our inquiry focused on "the expectations the circumstances should reasonably have engendered in the parties"). The fact that the easement benefits the owner of a particular tract, adds to the enjoyment of another parcel, or is of no value unless used in connection with particular land suggests appurtenance. *Broadwater Development*, ¶ 34. Furthermore, we begin with the presumption that the easement is appurtenant. *Broadwater Development*, ¶ 34.

¶18    Here, there is nothing to indicate that Amerigas or Bertelsen contemplated that their use of Tract B was independent of their use of Tract A. To the contrary, the record reflects that they used Tract B in connection with Tract A. In fact, the purpose of the easement was to facilitate Amerigas's business operations on Tract A, and this use is the manner by which the easement was established. Notably, "the right of transacting business upon land" is statutorily recognized as a type of easement appurtenant, *see* § 70-17-101(6), MCA, but is not listed as a type of easement in gross, *see* § 70-17-102, MCA. There also is nothing to indicate that Amerigas or Bertelsen expected to retain a personal, nonpossessory interest in Tract B rather than have the easement pass with the title to Tract A. All of this indicates that the easement is appurtenant.

¶19　Slauson's citations to *Rasmussen v. Fowler*, 245 Mont. 308, 800 P.2d 1053 (1990), in support of his "in gross" theory are unavailing. For one thing, the *Rasmussen* Court did not hold that "[a] lessee is not entitled to an easement appurtenant" or that "[a] prescriptive easement created for the benefit of an interest less than fee simple is not appurtenant." The Court did observe that Rasmussen, who held an agricultural lease on 200 acres of state land, could not have an easement appurtenant to the state land over Fowler's land. *Rasmussen*, 245 Mont. at 313, 800 P.2d at 1056. But the Court cited no authority in support of this proposition, and this portion of the opinion was arguably dictum in any event, given that the Court had already held that a public easement existed to access the state land, *see Rasmussen*, 245 Mont. at 312, 800 P.2d at 1056. Moreover, the facts and holding of *Leichtfuss*—where we concluded that a prescriptive easement in favor of a life estate may survive the extinguishment of the life estate and pass to a subsequent purchaser of that land, *see Leichtfuss*, ¶¶ 37-45—directly contradict Slauson's assertion that a prescriptive easement created for the benefit of an interest less than fee simple cannot be appurtenant. We conclude that the prescriptive easement over Tract B is appurtenant.

¶20　There is no question that this easement passed to Marozzo if it was attached to Tract A at the time of the Bertelsen-Marozzo sale. *See Burleson v. Kinsey Cartwright*, 2000 MT 278, ¶ 16, 302 Mont. 141, 13 P.3d 384 ("A transfer of real property passes all easements attached to it. Section 70-20-308, MCA. Thus, the valid conveyance of real property conveys all easements that attach to the property."); *accord Leichtfuss*, ¶ 29; *see also* Jon W. Bruce & James W. Ely, Jr., *The Law of Easements and Licenses in Land*

10

§ 9:1, 9-4 (2009) (hereinafter "Bruce & Ely") ("Appurtenant easements acquired by prescription are, of course, transferred with the dominant estate."). The question raised by Slauson, rather, is whether the easement existed when Bertelsen sold Tract A to Marozzo. More specifically: Did the termination of Amerigas's lease concomitantly extinguish the easement?

¶21    We addressed a similar issue in *Leichtfuss*, where the question was whether a prescriptive use established by the owners of a life estate terminated when the life estate ended. The general rule, we noted, is that "an easement burdening or benefitting an estate less than a fee simple ends when that estate expires." *Leichtfuss*, ¶ 37 (emphasis omitted); *see also* Bruce & Ely, § 2:9, 2-24 to 2-25, § 10:15, 10-32. We observed that this principle makes sense where the *servient* tenement is held in less than fee simple, as "a person can convey no more or greater title than he holds. In other words, a life tenant or a lessee generally cannot impose upon his land a burden that passes to the remainderman or the reversioner." *Leichtfuss*, ¶ 38 (citation omitted). But where (as here) the *dominant* tenement is held in less than fee simple, we concluded that "rigid application of a rule that prevents the *benefit* of an easement from running to a remainderman or reversioner is unsound." *Leichtfuss*, ¶ 41. Whether a prescriptive easement established by a life tenant or a lessee continues to exist after the life estate or leasehold ends depends on what the parties should reasonably have expected during the prescriptive period. *See Leichtfuss*, ¶¶ 42-44.

¶22    Applying this rule here, Marozzo offers a brief argument that Bertelsen, Amerigas, and Edwards did not expect the easement over Tract B to terminate with Amerigas's

lease of Tract A. However, this approach presupposes that the easement was held by an estate less than a fee simple, and Marozzo's primary argument is not that the easement was held by Amerigas, Bertelsen's lessee, but rather that it was held by Bertelsen, the fee simple owner of Tract A, and as such that it passed with the sale of Tract A. Slauson, on the other hand, insists that the easement was established by and for Amerigas; after all, Amerigas leased Tract A during the prescriptive period, Amerigas operated a business on that property, Amerigas's customers used Tract B for access and parking, and Amerigas constructed encroachments on Tract B in connection with its use of Tract A. Slauson thus maintains that the easement did not survive the extinguishment of Amerigas's lease. We conclude, however, that Slauson's argument is foreclosed by the District Court's decision in the prior lawsuit, which we affirmed in *Slauson*, and that *Leichtfuss*, therefore, is distinguishable and does not control the outcome of this case.

¶23 As Marozzo points out, Slauson chose in the prior lawsuit to sue Bertelsen, not Amerigas. The District Court ruled in November 2005 that "[t]he Defendants"—i.e., Bertelsen Family Trust, Neil Bertelsen and Phyllis A. Bertelsen, trustees—established a prescriptive easement to use Tract B. Granted, in reaching this conclusion, the court cited various uses of Tract B by Amerigas and implicitly assumed that these uses inured to the benefit of Bertelsen—a questionable assumption, given the longstanding legal principles discussed in *Leichtfuss*. But Slauson did not contest this aspect of the court's decision; and while he seems to do so now, he nevertheless conceded in the District Court that the present case is "controlled" by the court's November 2005 decision, and he likewise asserts on appeal that he and Marozzo are "bound" by that decision.

12

¶24 Thus, Slauson instead seeks to limit the easement recognized by the District Court in favor of Bertelsen. He contends that the easement was "for the benefit of [Bertelsen's] lessee" and not for the benefit of Bertelsen's successors, as if to suggest that Bertelsen's easement contained a durational limitation. Yet, while the District Court's decision sets forth limitations on the utilization of the easement, it does not set forth a limitation on the duration of the easement. Moreover, the record reflects that Bertelsen used Tract B along with Amerigas (e.g., he installed some landscaping on Tract B in the mid-1990s) and that Bertelsen intended the uses of Tract B which occurred during the prescriptive period to continue indefinitely. For these reasons, we do not agree with Slauson that the termination of Amerigas's lease extinguished Bertelsen's easement.

¶25 In sum, based on the facts and prior court decisions here, Bertelsen held a perpetual easement appurtenant over Tract B for the benefit of Tract A. The easement passed to Marozzo with the sale of Tract A, but it remains limited to the prescriptive uses which were established in the prior lawsuit and recited in the District Court's November 2005 judgment. The material facts being undisputed, and Marozzo having shown that it is entitled to judgment as a matter of law concerning the easement's validity, we hold that the District Court did not err in granting in part Marozzo's motion for summary judgment and denying in part Slauson's motion for summary judgment.

¶26 *Issue 2. Should Marozzo be awarded attorney's fees?*

¶27 Marozzo asserts that it is entitled to attorney's fees "because this suit was filed with both parties agreeing that the doctrine of *res judicata* applied and the scope of the easement was considered litigated in the previous court proceeding." Marozzo further

13

asserts that it is entitled to attorney's fees "due to Slauson's interference with the scope of the easement." As Slauson quite correctly points out, however, "[i]n the United States, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247, 95 S. Ct. 1612, 1616 (1975). This is in fact the longstanding rule in Montana, often referred to as the "American Rule," and we have held that "absent statutory or contractual authority, attorney's fees will not be awarded to the prevailing party in a lawsuit." *Erker v. Kester*, 1999 MT 231, ¶ 43, 296 Mont. 123, 988 P.2d 1221; *accord Stanley v. Lemire*, 2006 MT 304, ¶ 72, 334 Mont. 489, 148 P.3d 643. We have recognized an equitable exception to this rule under which "a district court may award attorney's fees to make an injured party whole under its equity powers." *Erker*, ¶ 44. This exception, however, applies only in "rare" and "isolated" instances—in particular, only where the action into which the prevailing party has been forced is utterly without merit or frivolous, and only in cases with particularly limited facts. *Erker*, ¶ 44; *Goodover v. Lindey's Inc.*, 255 Mont. 430, 446-47, 843 P.2d 765, 774-76 (1992); *Jacobsen v. Allstate Ins. Co.*, 2009 MT 248, ¶ 21, 351 Mont. 464, ___ P.3d ___.

¶28 Marozzo intimates that this is one of those rare and isolated instances in which an equitable award of attorney's fees should be granted; however, we are not persuaded that Slauson's claims against Marozzo were utterly without merit or frivolous. Alternatively, Marozzo contends that it is entitled to attorney's fees under § 70-17-112(5), MCA, which states that if a legal action is brought to enforce rights relating to a canal or ditch easement, the prevailing party is entitled to reasonable attorney's fees. Yet, Marozzo did

14

not bring this action to enforce an easement for a canal or ditch. And while Marozzo argues that the statute "should also include interference with prescriptive easements" like the one at issue here, this is an argument to be made to the Legislature. This Court may not rewrite the statute to suit Marozzo. Section 1-2-101, MCA ("In the construction of a statute, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted."). We accordingly conclude that Marozzo has not demonstrated that it is entitled to attorney's fees.

## CONCLUSION

¶29 The District Court determined that Bertelsen's prescriptive easement passed to Marozzo with the sale of Tract A. The court then awarded Marozzo $418.60 for the landscaping Slauson had removed from Tract B, awarded Slauson $430.00 for the costs of removing snow piled by Marozzo on Slauson's property south of the area subject to the easement, and denied Marozzo's request for costs and attorney's fees. The parties have not shown error in any of these rulings.

¶30 Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ MIKE McGRATH
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA O. COTTER
/S/ JIM RICE

15