No. 82-231

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

HELEN J. SOUDERS and KENNETH D.
LUFF,

        Plaintiffs and Respondents,

  -vs-

THE MONTANA POWER COMPANY, a Mont. corp.,

        Defendant and Appellant.

Appeal from:  District Court of the Thirteenth Judicial District,
In and for the County of Carbon, The Honorable
William J. Speare, Judge presiding.

Counsel of Record:

    For Appellant:

        Jardine, Stephenson, Blewett & Weaver; John D.
Weaver, P.O. Box 2269, Great Falls, Montana

    For Respondent:

        Raymond K. Peete, Billings, Montana

Submitted: March 3, 1983

Decided: April 26, 1983

Filed:  APR 26 1983

_Ethel M. Harrison_
Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Plaintiffs initiated this action for a declaratory judgment to determine their rights under a reservation in an assignment of an oil and gas lease. The District Court of the Thirteenth Judicial District, Carbon County, decided that the reservation was not restrictive and that the gas had been reserved for all purposes, not just those specified in the reservation.

Plaintiff, Helen J. Souders, is the daughter and successor in interest of her parents, Margaret Souders and S.M. Souders. Margaret Souders and S.M. Souders were secretary-treasurer and president of Montana Industrial Company.

In August 1926, S.M. Souders became the lessee of two oil and gas leases; one from the Montana Industrial Company, the other from his wife Margaret Souders. Souders assigned these leases to the Ohio Oil Company on April 4, 1927. The assignment contained the following clause:

> "EXCEPTING AND RESERVING, however, unto the party of the first part [Souders], the right to produce, take and use gas from the Eagle Sandstone and above on the above described lands, for the purpose of extracting, making, or manufacturing casing-head gasoline or by-products or carbon black, together with the right of ingress and egress and the right of installing machinery and equipment for the purpose of drilling for and producing gas from the eagle sandstone and stratas above, provided that the party of the first part shall so locate his operations and equipment so as to interfere as little as practical with the operations of the party of the second part."

The dispute here centers upon the interpretation of the words "for the purpose of extracting, making, or manufacturing casing-head gasoline or by-products or carbon black."

In 1964, the appellant, Montana Power Company, was assigned these leases from Ohio Oil Company's successor in interest, Marathon Oil Company.

In 1975, Helen Souders assigned her interests under the above reservation to Kenneth Luff.

Helen Souders and Luff brought this action to determine their rights under the reservation in the assignment of the leases.

The District Court at trial admitted into evidence oral and written testimony to help in interpreting the original 1927 assignment. Based on this extrinsic evidence, the District Court concluded that the reservation was not restrictive, and that plaintiffs had the right to produce and use the gas from the Eagle Sandstone formation and above for any purpose whatsoever.

The five issues raised by appellant, Montana Power Company, may be summarized in the following two issues:

1. Whether the reservation is ambiguous; and

2. Whether the District Court erred in admitting the extrinsic evidence to show the intent of the parties.

Under section 28-2-905(2), MCA, extrinsic evidence may be used to explain an ambiguity in a written contract. An ambiguity arises when a contract, taken as a whole in its wording or phraseology, is reasonably subject to two different interpretations. S-W Co. v. Schwenk (1977), 176 Mont. 546, 568 P.2d 145. This Court has also determined, however, that when the circumstances of the parties and their real purpose in executing and receiving the instruments are subject to interpretation, parol testimony may be used to determine what the parties meant by use of particular terms or phrases. Brown v. Merrill Lynch, Pierce, Fenner & Smith, Inc. (1982), ___ Mont. ___, 640 P.2d 453, 457, 39 St.Rep. 305, 309; Fillbach v. Inland Const. Corp. (1978), 178 Mont. 374, 379, 584 P.2d 1274, 1277.

Here, the real purpose of the parties in assigning the oil and gas leases is open to question. The first half of the reservation seems restrictive, while no restriction was placed in the egress and ingress clause. "By-products," according to the expert testimony at trial, could mean nearly any use of natural gas, including the use of "dry gas" or gas burned for heat in homes. What the parties meant by the use of the term "by-products" is therefore subject to interpretation.

Where the language of a contract is doubtful and ambiguous, the conduct of the parties under the contract is one of the best

indications of their true intent. Rumph v. Dale Edwards, Inc. (1979), 183 Mont. 359, 600 P.2d 163. Here, the evidence introduced by respondents showed the course of conduct between S.M. Souders and Ohio Oil Company, and was therefore relevant and competent. This evidence amply supports the District Court's conclusion that the reservation was not meant to be restrictive.

The District Court's judgment is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____
_____
_____
_____
Justices

_____
Honorable Henry Loble, District
Judge, sitting in place of Mr.
Justice John C. Sheehy