No. 85-178

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

VIRGIL S. PROCTOR, Personal Representative, of the ESTATE OF JESSIE M. SMART, Deceased, IDA S. MIEWALD, ETHEL V. HESS, JULIA E. REID, and JOHN R. STAM, Personal Representative of the ESTATE OF MINNIE MAY STAM, Deceased, JOHN R. STAM, Heir and Devisee of MINNIE MAY STAM, and RICHARD S. STAM, Heir and Devisee of MINNIE MAY STAM,

        Plaintiffs and Appellants,

and

TERESA E. PUCKETT, POLLY KEITH, CECELIA OLSON, PATRICIA LEINHART, BRIDGET M. MATHES and BERNADETT THORNLAND,

        Defendants and Appellants,

-vs-

CALISTA M. WERK, ELLA ORTNER, GEORGE ORTNER and LINDA ORTNER,

        Defendants and Respondents.

APPEAL FROM: District Court of the Seventeenth Judicial District, In and for the County of Blaine, The Honorable Chan Ettien, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Jardine, Stephenson, Blewett & Weaver; Alex Blewett argued, Great Falls, Montana
        Thompson & Swenson; Bruce E. Swenson argued, Havre, Montana

    For Respondent:

        Sias & Ranstrom; Bruce W. Moerer argued, Chinook, Montana

Submitted: October 29, 1985

Decided: February 20, 1986

Filed: FEB 20 1986

_____
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

The Blaine County District Court, interpreting a deed reservation as clear and unambiguous, granted summary judgment for respondents (mineral owners) and against appellants (royalty owners). Royalty owners appeal. We reverse and remand.

The sole and dispositive issue on appeal is whether the deed reservation was ambiguous, thereby demonstrating a genuine issue of material fact which precluded summary judgment.

In June 1944, Blaine County deeded land to John H. Miewald, reserving 5% of all oil, gas and other minerals. Later, in August of the same year, Mr. Miewald deeded the land to Minnie May Stam. The deed contained a reservation to Mr. Miewald of "six percent of all royalties received for oil and gas removed from the above-described property."

Mr. Miewald's 6% royalty reservation of 95% of oil and gas removed has now become vested in the large group of parties referred to as royalty owners but listed as plaintiffs/appellants and defendants/appellants.

In 1968, the mineral owners leased the property subject to a 1/8 landowners' royalty, that being 12½% of oil and gas produced. Later, the property began producing oil and a dispute arose. The mineral owners, whose deed is subject to the royalty reservation, contended that the royalty reserved was 6% of the landowners' royalty of 12½% of 95% of oil and gas produced. Stated differently, if 100 barrels of oil were produced, Blaine County would be entitled to 5% of production or 5 barrels and royalty owners would be entitled to 6% of 12½% of the remaining 95 barrels or approximately 3/4 of one barrel of oil.

In contrast, royalty owners argued that they were entitled to 6% of 95% of production. In other words, if 100 barrels of oil were produced, they would be entitled to 6% of 95 barrels or 5.7 barrels.

Thus, at issue, was whether the deed reservation conferred a royalty of 5.7 barrels out of every hundred or approximately 3/4 of a barrel out of every hundred.

In District Court, each side moved for summary judgment. The District Court, ruling on the basis the reservation was not ambiguous, granted summary judgment for the mineral owners.

Was the deed reservation ambiguous, thereby demonstrating a genuine issue of material fact which precluded summary judgment?

Section 70-1-513, MCA, provides that grants of real property are to be interpreted according to the same principles as contracts. Thus, under § 28-3-401, MCA, the language of the deed reservation is to govern interpretation if the language is clear and explicit. "Where the language of a written contract is clear and unambiguous, there is nothing to construe and the duty of the court is to apply the language, as written, to the facts of the case." Peterson v. Hopkins (Mont. 1984), 684 P.2d 1061, 1063, 41 St.Rep. 1140, 1142-43.

However, under §§ 28-2-905 and 70-20-202, MCA, if the language is not clear and explicit, extrinsic evidence may be used to explain an ambiguity. "Where the terms of an agreement are uncertain and ambiguous, parol evidence is admissible to prove the interpretation meant by the parties." Rumph v. Dale Edwards Inc. (1979), 183 Mont. 359, 368, 600 P.2d 163, 168. See also Souders v. Montana Power Co. (Mont. 1983), 662 P.2d 289, 290, 40 St.Rep. 583, 585.

3

Was the deed reservation ambiguous? A deed reservation is deemed ambiguous when taken as a whole, its wording or phraseology is reasonably subject to two different interpretations. See Souders, 662 P.2d at 290. The deed here stated:

> [s]ubject to a reservation hereby made to the party of the first part to six percent of all royalties received for oil and gas removed from the above-described property . . .

The District Court found Mr. Miewald's reservation comparable to an unambiguous reservation in Nourse v. Kovacevich (Cal.Ct.App. 1941), 109 P.2d 999. In Nourse, which awarded a percentage of the landowner's royalty and not a percentage of production, the deed reserved:

> [e]qual one-eighth of any royalty . . . developed on or received from said land, together with one-eighth of any cash bonus . . .

Citing Nourse, the District Court concluded that there was no ambiguity and that Mr. Miewald's reservation could only mean that the reserving party would take 6% of X% landowners' royalty from 95% of the minerals. While we might disagree with the analysis of the District Court, certainly there is a basis for arguing that its interpretation of Nourse was reasonably applicable.

We do not find that to be the only conclusion which can be reached from the reservation. The District Court in reaching its decision that the deed reservation was unambiguous, referred to the 1968 leases executed on the land, under which the landowners' royalty was 12½% of oil, gas and minerals produced. Yet, as pointed out by the District Court, this was a perpetual nonparticipating royalty because at the time of the reservation, no oil and gas lease was in existence. As a result, the reserved royalty is in no way dependent upon the terms or provisions of an oil and gas lease

4

executed in 1968. In Stokes v. Tutvet (1958), 134 Mont. 250, 328 P.2d 1096, relied upon by the District Court for the definition of perpetual nonparticipating royalty, we stated that in the broadest sense, royalty refers to an interest the landowner may create by outright reservation either _before_ or _after_ the execution of an oil and gas lease, and constitutes a share in production. Clearly, a landowner could reserve 50% or one-half of all oil and gas to be produced prior to execution of a lease so that he would receive 50 barrels out of every 100 barrels produced. While oil and gas leases frequently have a 12½% landowners' royalty, as was here executed in 1968, there are other oil and gas leases for lesser and greater percentages of production.

The present reservation is 6% of _all_ royalties received for oil and gas removed. The _Nourse_ reservation was 1/8 of _any_ oil royalties developed or received. Starting with the _Stokes_ analysis of royalty interests, in contrast to the _Nourse_ analysis by the District Court, it is possible to contend that the reservation meant 6% of all production when it spoke of 6% of all royalties. If that were the intent, it would then entitle the royalty owners to substantially more than was awarded under the District Court order.

We conclude that it is reasonably possible to construe the reservation as meaning 6% of all production received as well as meaning 6% of the landowners' royalty. As a result, we conclude that the deed reservation was ambiguous.

It is a well-established principle that summary judgment is only appropriate when there is no genuine issue as to any material fact. In this case, the determinative fact is the interpretation of the deed reservation. Yet the reservation is ambiguous and the true intent of the parties is discernable only with reference to extrinsic evidence. "Summary

judgment is usually inappropriate where the intent of the contracting parties is an important consideration." Twite v. First Bank (N.A.) Western Mont. (Mont. 1984), 692 P.2d 471, 472, 41 St.Rep. 2518, 2520; Fulton v. Clark (1975), 167 Mont. 399, 404, 538 P.2d 1371, 1374. We hold that summary judgment was inappropriate because the deed alone did not establish the true intent of the parties.

We reverse and remand for further proceedings consistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices