No. 88-551

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

---

AETNA FINANCE COMPANY,
a corporation,

        Plaintiff and Appellant,

  -vs-

COURT E. BALL and TOWE, BALL,
ENRIGHT & MACKEY, a partnership,

        Defendants and Respondents.

---

APPEAL FROM:  District Court of the Thirteenth Judicial District,
              In and for the County of Yellowstone,
              The Honorable Diane G. Barz, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Robert J. Phillips; Snavely & Phillips, Missoula,
        Montana

    For Respondent:

        Richard E. Gillespie; Keller, Reynolds, Drake, Stern-
        hagen & Johnson, Helena, Montana

---

Submitted on Briefs:  April 27, 1989

Decided:   June 15, 1989

Filed:

_____
                Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Aetna Finance Company (Aetna) appeals the final judgment entered September 9, 1988, by the Thirteenth Judicial District Court in favor of the defendants. The court held that Aetna's attorney, defendant Court Ball, fulfilled his duty to advise Aetna as to whether a proposed borrower had a mortgageable interest in certain real property, such that Aetna could obtain a secured interest in the property, and whether the mortgagee title insurance would appropriately insure this secured interest. Therefore, defendants were held not liable for any legal malpractice. We affirm.

The issues presented for our review are as follows:

1. Did attorney Ball have a duty to assure that client Aetna had a valid secured interest and that it received mortgagee title insurance covering that secured interest?

2. Did the attorney breach this duty to his client?

The ownership history of that real property central to the issues raised in this appeal is quite lengthy and involved. We will detail only those stipulated facts regarding this property which are directly relevant to the legal malpractice issues raised by Aetna.

On September 9, 1980, Anne Zemple executed a trust agreement conveying in trust a certain parcel of real property in Gallatin County to Henry Richner. Richner, as trustee, assumed the responsibility of making improvements to the property. To this end, Richner secured a loan for $25,000 from Aetna on August 7, 1981. This loan was secured by a trust indenture prepared by attorney Ball and signed by Richner. Ball prepared this trust indenture per instructions from Aetna after having advised Aetna to ensure that Richner

had authority to grant a security interest in the property. In response, Aetna obtained from Zemple a Consent to Mortgage which gave her agreement to a mortgage of the property as security for this loan.

On March 2, 1983, Richner executed, without designation of capacity, a Quit Claim Deed conveying his interest in the property back to Zemple. Thereafter, Richner began making arrangements with Aetna to obtain another loan totaling $38,829.66.

On November 4, 1983, the USLIFE Title Insurance Company (Company) issued a commitment for title insurance which stated it would generally insure title to the property from all claims except those affecting title and arising out of the trust agreement dated September 9, 1980 and/or the Quit Claim Deed executed on March 2, 1983. The Company later issued a mortgagee title policy containing these exceptions.

During a meeting in Ball's office on November 11, 1983, Aetna informed him of Richner's request for an additional loan against the property. Ball testified that after examining the Quit Claim Deed and title commitment, he advised Aetna to determine if the trust was still effective, and if so, to obtain another Consent to Mortgage from Zemple. Ball then prepared a consent form, and Aetna subsequently obtained the necessary signature. Ball also advised Aetna to get the two above-mentioned exceptions on the title insurance commitment removed. During a telephone conversation on November 18, 1983, Aetna told Ball that the Company would delete the Quit Claim Deed Exception. Consequently, Ball advised Aetna it could proceed with the closing of the loan, and he subsequently prepared a trust indenture which Richner then signed. Ball was present at the closing of this loan that same day.

Ball prepared a post-closing written opinion on November 21, 1983, upon request of Aetna, stating that the trust indenture signed by Richner had created a valid security interest in the property sufficient to enable Aetna to obtain mortgagee title insurance. Ball testified that this opinion was based upon review of the Consent to Mortgage, the title commitment naming Richner as the vested trustee owner, and Aetna's verbal assurance that the Company would delete the Quit Claim Deed exception. Ball did not see the mortgagee title insurance policy, which was issued November 21, 1983 and which in fact retained the two exceptions, prior to issuance of this written opinion.

Richner defaulted on his loan obligation on January 3, 1984. Ball, acting on behalf of Aetna, commenced foreclosure proceedings. Zemple filed suit against Aetna and Ball to obtain damages and a permanent injunction against foreclosure of the trust indenture. Aetna filed a counterclaim against Zemple and a third party complaint against Ball. The lawsuit against Aetna was subsequently settled by Zemple's payment of $23,998.26 to Aetna in exchange for Aetna's reconveyance of the trust indentures, cancellation of the promissory notes, and dismissal of the counterclaim against Zemple. Thereafter, the court ordered a realignment of the remaining parties with Aetna as the plaintiff and Ball and his law firm as defendants.

Following a non-jury trial on July 5 and 6, 1988, the District Court issued its findings and rendered judgment in favor of defendants in this realigned lawsuit. The court held that Ball had not assumed the duty of guaranteeing that the title company would issue appropriate coverage insuring Aetna's interest in the property. Rather, Ball was employed as an attorney with limited duties and he fulfilled these by advising Aetna how to proceed to insure its interest in the

4

property. Defendants thus were held not liable for any loss Aetna incurred by virtue of its loss of a security interest in the property, an interest which had guaranteed repayment of monies loaned to Richner.

Aetna alleges that Ball had a duty to ensure that it received a security interest and appropriate title insurance for that security interest. Aetna contends Ball's failure to fulfill these duties constituted a breach of contract as well as negligence.

This whole case turns on a determination of what duties Aetna retained Ball to fulfill. The parties dispute the specific duties for which the attorney-client relationship was created, and not the general duties owed clients in general. See generally, Huszagh and Molloy, Legal Malpractice: A Calculus For Reform, 37 Mont.L.Rev. 279, 335 (1976) (recognizing the two subparts to the duty element). This dispute is one of material fact. The broad standard of review urged by Aetna, which would allow this Court to make a determination of this case based upon our own findings, therefore is not applicable to this case. Such a broad standard of review would be applicable only if the facts were relatively uncontested. See, e.g., Johnson v. Division of Motor Vehicles (1985), 219 Mont. 310, 312, 711 P.2d 815, 816. Because a factual dispute exists as to the specific duties Ball was obligated to perform, we will rely on the District Court's findings and presume that they are correct unless unsupported by substantial, credible evidence and thus clearly erroneous. As stated in Rule 52(a), M.R.Civ.P.:

> Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

The District Court examined the nature of past legal dealings between Aetna and Ball to determine the terms of their attorney-client contractual relationship. The court did not abuse its discretion in ascertaining the exact duties Aetna intended Ball to perform from an examination of the parties' conduct. We have previously held that when contract terms are ambiguous, the conduct of the parties is the best indication of the true intent of the parties at the time of contracting. E.g., Souders v. Montana Power Co. (1983), 203 Mont. 483, 486, 662 P.2d 289, 291; Rumph v. Dale Edwards, Inc. (1979), 183 Mont. 359, 368, 600 P.2d 163, 168. A court then must interpret the terms of a contract so as to give effect to this initial intent. See § 28-3-301, MCA.

From an examination of the parties' conduct, the District Court determined that the parties intended Ball to determine if the proposed borrower had a mortgageable interest which could act as security for the proposed loan. Moreover, Ball was to review the title commitment to determine if this secured interest would be covered under an appropriate mortgagee title insurance policy. If Aetna did not have a valid interest, Ball was to advise Aetna what actions to take to obtain such a valid security interest and/or appropriate title insurance coverage. Aetna, not Ball, had the responsibility for acting upon this advice. The court concluded that Ball fulfilled these advisory duties and thus he was not liable for any negligence or breach of contract.

Substantial credible evidence exists in support of the court's findings as to the nature of the duties Ball was retained to perform. Ball testified that Aetna hired him to advise it as to the validity of the security interest and title insurance coverage, to issue a written opinion as to the validity of each, to prepare the trust indenture

6

document, and to attend the closing. He testified that he was not expected to ensure the validity of the security interest or appropriateness of the title insurance coverage. In Ball's opinion, Aetna routinely handled all these other details and problems, arising in regards to loan transactions, to save the cost of attorney's fees and thereby to remain competitive in the lending market.

Memos from a telephone conversation and meeting prior to the 1981 loan by Aetna reveal that Ball assumed the responsibility only for advising Aetna of the steps necessary to ensure appropriate mortgagee title insurance coverage. Memos from a November 11, 1983 meeting with Aetna again reveal that Ball only advised Aetna of steps it should take to ensure a valid security interest and appropriate title insurance in regards to the proposed 1983 loan. Moreover, Ball testified he advised Aetna to obtain a consent to mortgage from Zemple, which Aetna subsequently obtained. Ball also testified he advised Aetna to ensure appropriate mortgagee title insurance coverage by having the title company remove from the policy those two exceptions detrimental to insurance coverage. A telephone call from an Aetna representative on November 18, 1983, as documented on a message pad, indicated that Aetna had assumed the duty of resolving those problems brought to its attention by Ball and had induced the title company to delete the quit claim deed exception. Ball testified that his subsequent written opinion was based upon this telephone assurance that Aetna, in fact, had acted upon his legal advice. Given all the foregoing evidence indicating Ball routinely assumed only an advisory responsibility regarding Aetna's security interest and mortgagee title insurance, we hold that the District Court's findings, that Ball did not have a duty to ensure the validity of the security interest and the appropriateness of

7

mortgagee title insurance coverage, were not clearly erroneous.

The evidence indicated that Ball did not "delegate" to Aetna a duty to ensure the accuracy of the security interest and appropriateness of mortgagee title insurance. Rather, Aetna only contracted with Ball to obtain his advisory opinion about whether or not a valid security interest and appropriate mortgagee title insurance existed, and if not, what steps to take to achieve appropriate coverage. The District Court thus did not abuse its discretion in finding that Ball had fulfilled all those duties undertaken and, consequently, in holding Ball not liable for breach of contract. The judgment of the District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices