DA 08-0587

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 317

BROADWATER DEVELOPMENT, L.L.C.,
and LEWIS AND CLARK COUNTY,

> Plaintiffs and Appellees,

v.

STEPHANIE J. NELSON,

> Defendant and Appellant.

APPEAL FROM:   District Court of the First Judicial District,
In and for the County of Lewis and Clark, Cause No. CDV-2007-944
Honorable Thomas C. Honzel, Presiding Judge

COUNSEL OF RECORD:

> For Appellant:

> Colleen M. Dowdall, Worden Thane P.C., Missoula, Montana

> For Appellee Broadwater Development L.L.C.:

> Amos Rogers Little, III, Attorney at Law, Helena, Montana

> For Appellee Lewis and Clark County:

> Leo J. Gallagher, Lewis and Clark County Attorney, K. Paul Stahl,
> Jeff Sealey, Deputy County Attorneys, Helena, Montana

> Submitted on Briefs:  July 8, 2009

> Decided:  September 24, 2009

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Broadwater Development, LLC filed a Petition for Declaratory Judgment in the First Judicial District Court, Lewis and Clark County, on December 4, 2007, seeking declaratory rulings that an alleged 60-foot emergency public access and utility easement over the property of Stephanie J. Nelson is valid and enforceable against Nelson and that a Notice of Invalid Easement filed in the Lewis and Clark County Clerk and Recorder's Office is invalid and of no legal effect. Nelson answered the petition and denied Broadwater Development's allegations. Thereafter, Lewis and Clark County intervened in the litigation in order "to protect its interest" in the alleged easement. The District Court ultimately granted summary judgment in favor of Broadwater Development and the County, determining that the alleged 60-foot easement is a valid and enforceable express easement and that the Notice of Invalid Easement is itself invalid. Nelson now appeals. We affirm.

## BACKGROUND

¶2 The properties at issue in this case are located west of Helena, Montana, on the north side of U.S. Highway 12. The westernmost property is owned by Frank and Bonita Gruber, who in 2002 began the process of subdividing this land to create the Broadwater Estates Major Subdivision. To the north and east of the subdivision, but not part of the subdivision, is a parcel (the "Gruber parcel") which the Grubers owned in 2002 and then sold to Michael and Gaylynn Wagner in 2003. Finally, the easternmost property (the "State Nursery property") was owned by State Nursery & Seed Company until 2003 and is now owned by Nelson.

2

¶3 Piecing together two surveys of the area provided in the record, the properties are situated as follows:



Gruber parcel

State Nursery property

disputed 60' easement

Broadwater Estates Subdivision

Old Broadwater Lane

Broadwater Estates Subdivision

Intersection of Hwy. 12 and the easement

Hwy. 12

Intersection of Hwy. 12 and Old Broadwater Lane

¶4 In July 2002, the County granted preliminary approval for the creation of the Broadwater Estates Major Subdivision (consisting of 60 lots). The preliminary approval was subject to 25 conditions that had to be met before the subdivision could receive final approval. Of relevance here, County regulations required the subdivision to have two ingress/egress routes meeting County road standards. Because only one such route existed (Old Broadwater Lane, which runs from Highway 12 through the proposed subdivision in a northerly direction), the Grubers proposed to create a second route

3

connecting to the highway through land located north and east of the subdivision. Specifically, the route would begin at the existing terminus of Old Broadwater Lane, cross the Gruber parcel, enter the adjoining State Nursery property and connect with the existing State Nursery access road, and then end at the highway. The County agreed with this proposal and included the following condition in the preliminary approval:

> The Applicant shall construct a secondary access road, 20-feet wide with 6-inches of all-weather surfacing . . . , from Old Broadwater Lane to connect to the existing State Nursery access road. A 60-foot wide public access easement shall be placed along the secondary access road from the end of Old Broadwater Lane, across the Applicant's property, along the existing access road to the State Nursery, and along the existing State Nursery access road to its intersection with US Highway 12 West. The Applicant shall present legal documentation that has been filed with the County Clerk and Recorders Office verifying the creation of the easement.

¶5 On July 30 and 31, 2003, the Grubers and Dean Mills (President of State Nursery) executed a document which purported to create the required easement. This document, filed with the Lewis and Clark County Clerk and Recorder on July 31, 2003, and numbered 3046859, is at the center of the present litigation. It was prepared by a licensed land surveyor and is titled:

60' EMERGENCY PUBLIC ACCESS & UTILITY EASEMENT
FOR:  BROADWATER ESTATES MAJOR SUBDIVISION

The document contains a depiction of the easement, which is labeled "60' Emergency Public Access & Utility Ease." From west to east, the easement is shown beginning at an "Existing 60' Easement," crossing property identified as being owned by the Grubers followed by property identified as being owned by State Nursery, and terminating at Highway 12. The easement is also described in metes and bounds. There is a space titled

4

"Certificate of Surveyor," which is signed by Stephen J. Ries and dated July 30, 2003. There is also a "Certificate of Land Owners," which states: "We the undersigned property owners, hereby create this 60 foot emergency public access and utility easement; as shown by this exhibit." The document is signed by Dean Mills, Frank Gruber, and Bonita Gruber, each of whom is specifically identified as an "Owner." It is also signed by the CEO of Mountain West Bank, N.A. In addition, a signature block for Syngenta Seeds, Inc. is included but is not signed. We shall refer to this document, a copy of which is attached as an appendix to this Opinion, as the "Easement Agreement."[1]

¶6    As noted, Nelson now owns the State Nursery property. She obtained this property through the following series of events. Between 1999 and 2001, State Nursery executed several promissory notes which were held by Mountain West Bank and secured by mortgages on the State Nursery property. On July 23, 2003, Mountain West initiated

[1] Broadwater Development has made a bit of an issue about what the document should be called. Initially, the parties referred to it as "Certificate of Survey 3046859." But six days after we announced our decision in *Blazer v. Wall*, 2008 MT 145, 343 Mont. 173, 183 P.3d 84, Broadwater Development filed a motion in the District Court to amend its Petition for Declaratory Judgment "to correct all references to the subject document from 'Certificate of Survey No. 3046859' to its appropriate characterization as the Easement recorded under Reception No. 3046859 at Book M29, p. 322." Since then, the parties and the District Court have used various terms, including Certificate of Survey, easement survey, easement survey diagram, Easement Agreement, 60' Easement, and the Easement. Notably, the document bears the indicia of a certificate of survey in that it contains "a drawing of a field survey prepared by a registered surveyor for the purpose of disclosing facts pertaining to boundary locations," § 76-3-103(1), MCA; and as we have previously observed, if something "looks like a duck, walks like a duck and quacks like a duck, it must be a duck[,] . . . even if it is holding a piece of paper that says it is a chicken," *Wild v. Fregein Construction*, 2003 MT 115, ¶ 31, 315 Mont. 425, 68 P.3d 855. On the other hand, the document also contains express language purporting to create an easement, and it is signed by the landowners. Thus, for the sake of consistency, and because the document's label is less important than its contents, we shall use the term "Easement Agreement."

a foreclosure action against State Nursery naming several individuals and entities as defendants, including Syngenta Seeds. Syngenta was named because it held a mortgage on the State Nursery property, and Mountain West alleged that Syngenta's mortgage was subordinate to Mountain West's mortgages. The District Court ordered foreclosure in December 2003; Mountain West purchased the State Nursery property at public auction in March 2004; Syngenta exercised its right of redemption in April 2005; and Syngenta assigned to Nelson its right to receive the Sheriff's Deed in June 2005. On July 7, 2005, Mike Nelson (acting as property manager for Syngenta) recorded a document titled "Notice of Invalid Easement," in which he asserted that the Easement Agreement was "invalid due in part by a lack of vital signatures and a blatant disregard for the largest lien holder of the property in question." Finally, the Sheriff's Deed conveying the State Nursery property to Stephanie Nelson was executed July 11 and recorded July 22, 2005.

¶7    Meanwhile, immediately after signing the Easement Agreement on July 31, 2003, the Grubers conveyed the Gruber parcel to the Wagners. The following month, the Grubers granted Broadwater Development (owned by Michael Wagner at the time) an exclusive right to develop, improve, and sell parcels of the Broadwater Estates Major Subdivision. According to the parties' agreement, Broadwater Development was to complete certain infrastructure development by a specified date and the Grubers were to provide signed warranty deeds to each parcel, when properly created, for transfer of title to the ultimate purchaser at closing. Michael Wagner died in October 2005, and Gaylynn Wagner (as personal representative of his estate) sold Broadwater Development to Joseph Mueller in October 2006. As part of the purchase agreement, Mueller agreed that

6

Broadwater Development would remain obligated to perform the agreements related to the development of Broadwater Estates Major Subdivision.

¶8    One such agreement was a Subdivision Improvements Agreement executed by Broadwater Development, the Grubers, and the County on July 11, 2006, in conjunction with the final subdivision plat approval. Among other things, Broadwater Development and the Grubers agreed within a specified timeframe to construct the secondary access road from Old Broadwater Lane to the existing State Nursery access road. At this point, Gaylynn Wagner owned the Gruber parcel and Nelson owed the State Nursery property. Broadwater Development proceeded with construction of the road from the terminus of Old Broadwater Lane over the Gruber parcel. But Nelson refused to permit construction of the road across the State Nursery property, and she refused to remove encroachments within the easement. In addition, her husband apparently threatened to file charges if the road builder entered the State Nursery property. Consequently, Broadwater Development commenced the instant action against Nelson in order to establish the validity of the easement, and the County later intervened, as noted, in order "to protect its interest" in the easement. In addition, the County extended Broadwater Development's deadline for completing the mandates of the Subdivision Improvements Agreement.

¶9    The parties filed cross-motions for summary judgment. Their briefing focused on whether the Easement Agreement validly created the 60-foot easement. Broadwater Development and the County argued that the document met all of the formal requirements for granting an express easement. Furthermore, the County argued that the easement was an easement in gross held by the public and, as such, did not have a

7

dominant tenement (i.e., did not benefit a particular parcel of land), though the County also asserted that the residents of Broadwater Estates in particular were "entitled to the benefit of the easement to ensure their health and safety in case of an emergency."

¶10 In Nelson's view, however, the Easement Agreement was deficient in several respects—namely, it failed to identify the grantor and the grantee, failed to identify the dominant and servient tenements, did not include language of transfer, did not adequately describe the servitude being created, and did not contain language of dedication to the public. Nelson opined that the document was simply "an exhibit" that was designed to be referred to in a separate instrument of conveyance, but she pointed out that there were no instruments of conveyance referring to the Easement Agreement. Moreover, invoking *Blazer v. Wall*, 2008 MT 145, 343 Mont. 173, 183 P.3d 84, Nelson analogized the depiction in the Easement Agreement to the depiction in the certificate of survey at issue in *Blazer*. She argued that the easement shown in the Easement Agreement could be across the State Nursery property for the benefit of the Gruber parcel or could be across the State Nursery property and the Gruber parcel for the benefit of the Broadwater Estates Major Subdivision (which, she contended, did not exist at the time the Easement Agreement was executed because it had not yet received final approval from the County). Nelson contended that this uncertainty as to the identity of the dominant tenement was fatal under *Blazer*, and she insisted that Broadwater Development's and the County's reliance on factual information not contained on the face of the Easement Agreement was inappropriate. Finally, as to the County's contention that the purported easement was in gross, Nelson asserted that the easement was not for the general public to use in the same

8

way as Highway 12; rather, "the title [of the Easement Agreement] indicates that whatever was to be transferred was to benefit the Broadwater Estates Subdivision."

¶11 In addressing the parties' contentions, the District Court first decided that this case does not involve the easement-by-reference doctrine, under which an easement may be created by referring in an instrument of conveyance to a recorded plat or certificate of survey on which the easement is adequately described. *Blazer*, ¶¶ 27, 40. Rather, the court stated, "the dispositive issue is whether the Grubers and State Nursery created a valid express easement while using an easement survey diagram, along with a metes and bounds description to describe the easement." Nevertheless, the court noted that some of the principles articulated in *Blazer* were "guiding" in determining this issue.

¶12 The District Court then considered the requirements for expressly granting an easement: an instrument in writing that identifies the grantor and the grantee, adequately describes what is being conveyed, contains language of conveyance, and is signed. *See Kuhlman v. Rivera*, 216 Mont. 353, 359, 701 P.2d 982, 985 (1985); §§ 70-20-101, -103, MCA. Here, the court observed, the Easement Agreement is in writing, the property owners are identified as the Grubers and State Nursery, the Grubers and State Nursery signed the document, and it can be reasonably ascertained from the document as a whole that the Grubers and State Nursery are the grantors and Broadwater Estates Major Subdivision is the grantee. Next, the court determined that the easement is adequately described since the Easement Agreement states that the easement is to serve as a public access and utility easement for the subdivision and since the easement's course is detailed in a diagram as well as a metes-and-bounds description. The court further determined

9

that the terms "hereby create" in the sentence "We the undersigned property owners, hereby create this 60 foot emergency public access and utility easement" constitute language of conveyance. Lastly, the court noted that the Easement Agreement was recorded, thus putting Nelson on notice of the easement's existence.

¶13 In light of the foregoing, the District Court held that "the Grubers and State Nursery conveyed and created an easement, using an adequately labeled diagram and express language." The court thus granted Broadwater Development's and the County's motions for summary judgment and denied Nelson's motion for summary judgment. The court entered judgment decreeing that the 60-foot easement is "a valid and enforceable express easement" and that the Notice of Invalid Easement is invalid.

## ISSUES

¶14 Nelson contends that the District Court erred in granting summary judgment in favor of Broadwater Development and the County. She raises three issues:

1. Did the District Court erroneously rely on facts outside the four corners of the Easement Agreement, making summary judgment inappropriate?

2. Does the Easement Agreement satisfy the requirements for creating an express easement?

3. Did the County fail to accept the easement?

## STANDARD OF REVIEW

¶15 We review de novo a district court's ruling on a motion for summary judgment, applying the criteria set forth in M. R. Civ. P. 56. *Arnold v. Yellowstone Mountain Club, LLC*, 2004 MT 284, ¶ 12, 323 Mont. 295, 100 P.3d 137. Summary judgment "shall be

10

rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M. R. Civ. P. 56(c). Whether a fact is "material" depends on the substantive law, i.e., the elements of the cause of action or defenses at issue. *See Arnold*, ¶ 15; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). Only genuine disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510. A dispute is "genuine" if the evidence is such that a reasonable fact-finder could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510. Where the material facts are undisputed, the court must simply identify the applicable law, apply it to the uncontroverted facts, and determine who prevails. *See Corporate Air v. Edwards Jet Center*, 2008 MT 283, ¶ 28, 345 Mont. 336, 190 P.3d 1111.

**DISCUSSION**

¶16  *Issue 1.  Did the District Court erroneously rely on facts outside the four corners of the Easement Agreement, making summary judgment inappropriate?*

¶17  Nelson contends that in support of their motions for summary judgment, Broadwater Development and the County presented the District Court with extrinsic evidence—i.e., "[e]vidence relating to a contract but not appearing on the face of the contract because it comes from other sources, such as statements between the parties or the circumstances surrounding the agreement," *Black's Law Dictionary* 578 (Bryan A. Garner ed., 7th ed., West 1999). Nelson further contends that the District Court relied on

11

this evidence when interpreting the Easement Agreement. She lists a number of "extrinsic facts" the court considered, including the following: Broadwater Estates Major Subdivision is located west of Helena off Highway 12; the Grubers own the property making up the subdivision; the County conditioned final approval of the subdivision on the creation of an easement and the construction of a road across the Gruber parcel and the State Nursery property; the Easement Agreement was executed and recorded in 2003 "in accordance with" this condition; the Grubers granted Broadwater Development the right to develop the subdivision; the Grubers, Broadwater Development, and the County entered into a Subdivision Improvements Agreement which required the developer to construct the road by a specified date; Mueller bought Broadwater Development and assumed responsibility for Broadwater Development's obligations; and the County has extended the deadline for completing the road.

¶18 Nelson reasons that the Easement Agreement "alone" must meet the requirements of an express easement, but the Easement Agreement is deficient in numerous respects, thus the extrinsic evidence provided by Broadwater Development and the County must have been a "factor" in the District Court's determination that the easement is valid. Citing *Blazer*, ¶ 49, and *Proctor v. Werk*, 220 Mont. 246, 250, 714 P.2d 171, 173 (1986), Nelson argues that the essential elements of an express easement may not be supplied by extrinsic evidence and that "[w]hen extrinsic evidence is required to determine the interpretation of a contract, summary judgment is not appropriate." In other words, she claims that the District Court erroneously relied on facts outside the four corners of the Easement Agreement, making summary judgment inappropriate. We disagree.

12

¶19    The construction of a writing granting an interest in real property (such as an easement) is governed by the rules of contract interpretation. *See Van Hook v. Jennings*, 1999 MT 198, ¶¶ 10-12, 295 Mont. 409, 983 P.2d 995; *Mularoni v. Bing*, 2001 MT 215, ¶ 32, 306 Mont. 405, 34 P.3d 497; *Mary J. Baker Revoc. Trust v. Cenex Harvest States*, 2007 MT 159, ¶ 18, 338 Mont. 41, 164 P.3d 851; *Wills Cattle Co. v. Shaw*, 2007 MT 191, ¶ 19, 338 Mont. 351, 167 P.3d 397; § 70-1-513, MCA. Those rules, in turn, state that a contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, § 28-3-301, MCA, and that when a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone if possible, § 28-3-303, MCA. Indeed, when the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore, as a general rule, there can be between the parties and their representatives or successors in interest no evidence of the terms of the agreement other than the contents of the writing. Sections 28-2-905(1), 70-20-202(1), MCA.

¶20    But contracts are not created in a vacuum, and the foregoing rules do not prohibit a court from hearing the circumstances under which the agreement was made or the matter to which it relates. *See* §§ 28-3-402, 28-2-905(2), 70-20-202(2), MCA. As the County points out, § 1-4-102, MCA, states that "[f]or the proper construction of an instrument, the circumstances under which it was made, including the situation of the subject of the instrument and of the parties to it, may also be shown so that the judge is placed in the position of those whose language the judge is to interpret." In *Baker Revoc. Trust*, ¶ 47 n. 5, we noted that there may be several purposes for which evidence is admissible under

13

this statute. For example, objective evidence of the circumstances under which a contract was made may be shown to aid the court in determining, as a preliminary matter, whether the contract contains an ambiguity.[2] *Baker Revoc. Trust*, ¶ 55; *accord Richards v. JTL Group, Inc.*, 2009 MT 173, ¶ 33, 350 Mont. 516, 212 P.3d 264. Likewise, we recently considered surrounding circumstances in determining whether a particular interpretation of an easement agreement would lead to an absurdity. *Mattson v. Montana Power Co.*, 2009 MT 286, ¶¶ 26-28, 352 Mont. 212, ___ P.3d ___. And, as discussed below, the determination of whether a given easement is appurtenant or in gross may require consideration of the circumstances existing at the time of execution. *See* ¶ 34, *infra*.

¶21 Still, there are limits on the use of such evidence, particularly when it comes to written documents of conveyance. Evidence of surrounding circumstances may not be used to add to, vary, or contradict the terms of the contract. *Baker Revoc. Trust*, ¶ 21. Nor may extrinsic evidence be used to supply a property description in the first instance, to complete a description that is insufficient, or to show the intention with which it was made. *See Blazer*, ¶ 71. And it may not be used to show an intention independent of the instrument. *See Hollis v. Garwall, Inc.*, 974 P.2d 836, 843 (Wash. 1999). As we have said, good-faith purchasers of real property are entitled to rely on publicly recorded deeds, plats, and certificates of survey pertaining to the subject property to disclose accurately all encumbrances, easements, and impediments thereon; they are not required to track down unrecorded extrinsic evidence in order to ascertain the use or necessity of a

---

[2] The parties do not contend that the Easement Agreement contains ambiguous terms. In fact, Broadwater Development and the County contend that it is unambiguous, while Nelson argues that it is simply missing essential terms.

14

purported easement depicted on a plat or certificate of survey in their chain of title. *Blazer*, ¶ 74. Requiring subsequent purchasers to investigate not only their chain of title but also the "context" within which each conveyance in the chain was executed "would be an impractical burden, perhaps an impossible one, and would virtually destroy the utility of the real estate recording system."[3] *Olson v. Trippel*, 893 P.2d 634, 639 (Wash. App. Div. 2 1995).

¶22 The sum of all this is that a court is not required to conduct its analysis in a vacuum. For purposes of interpreting a writing granting an interest in real property, evidence of the surrounding circumstances, including the situation of the property and the context of the parties' agreement, may be shown so that the judge is placed in the position of those whose language the judge is to interpret. Section 1-4-102, MCA. However, to comply with the statute of frauds (§ 70-20-101, MCA) and the recording system (*see generally* Title 70, chapter 21, MCA), the writing itself must ultimately stand on its own and meet all of the formal requirements for granting the property interest.

¶23 Here, the District Court was apprised of various facts not contained within the four corners of the Easement Agreement. The court was allowed to consider this evidence for purposes of understanding the situation of the parties, the properties, and the easement at issue. The court recited these "extrinsic facts" as "Background" in its Memorandum and Order, but it appears that the court's analysis of the easement's validity was limited to the face of the Easement Agreement—Nelson's speculation to the contrary notwithstanding.

---

[3] For these reasons, we reject Broadwater Development's and the County's use of affidavits provided by Mills and the Grubers in which they state what their intention was in executing the Easement Agreement.

15

Finally, unlike *Proctor*, where "the true intent of the parties [was] discernable only with reference to extrinsic evidence," *Proctor*, 220 Mont. at 250, 714 P.2d at 173, we conclude below in Issue 2 that the Grubers' and State Nursery's intent is discernable without reference to extrinsic evidence. Accordingly, we hold that the District Court did not erroneously rely on "extrinsic facts."

¶24 **Issue 2. Does the Easement Agreement satisfy the requirements for creating an express easement?**

¶25 Broadwater Development and the County claim an easement created by express grant in the Easement Agreement. An easement may be expressly granted by using appropriate language in an instrument of conveyance, *see e.g. Kuhlman*, 216 Mont. at 359, 701 P.2d at 985, or by referring in an instrument of conveyance to a recorded plat or certificate of survey on which the easement is adequately described (the easement-by-reference doctrine), *see Blazer*, ¶¶ 40-41. Nelson asserts that the Easement Agreement "combines the elements" of both of these methods, and she relies heavily on *Blazer* in arguing that the Easement Agreement is deficient. She asserts that the facts of *Blazer* are "similar to" the facts of this case, and she attempts to show that the Easement Agreement suffers from the same inadequacies that existed in the *Blazer* certificate of survey.

¶26 At the outset, we do not agree that this is an easement-by-reference case. We are not presented with an instrument of conveyance that refers to a recorded plat or certificate of survey on which an easement is depicted and purports *by such reference* to reserve or grant an easement. *See e.g. Bache v. Owens*, 267 Mont. 279, 883 P.2d 817 (1994); *Halverson v. Turner*, 268 Mont. 168, 885 P.2d 1285 (1994); *Pearson v. Virginia City*

16

*Ranches Assn.*, 2000 MT 12, 298 Mont. 52, 993 P.2d 688.  The only document at issue here is the Easement Agreement, which purports *by its own express language* to create the easement that is depicted and described on the face of the document.  The question is whether this document is sufficient in itself to create the easement.  Nevertheless, we do agree with Nelson and the District Court that certain principles articulated in *Blazer* (and repeated where applicable below) are "guiding" in our analysis.

¶27    An express grant must be in writing, § 70-20-101, MCA, and the grantor's intent to create an easement burdening particular property for the benefit of another must be clearly and unmistakably communicated, *Blazer*, ¶ 43.  The whole of the writing is to be taken together so as to give effect to every part if reasonably practicable, each clause helping to interpret the other.  Section 28-3-202, MCA.  To be a valid conveyance, the writing must (1) identify the grantor and the grantee, (2) adequately describe what is being conveyed, (3) contain language of conveyance, and (4) be signed.  *Kuhlman*, 216 Mont. at 359, 701 P.2d at 985 (citing § 70-20-103, MCA).  Here, the grantor's identity, the language of conveyance, and the signature requirements are easily established; however, the grantee's identity and the property description require a more involved analysis.  We address each in turn.

¶28    **Identity of the grantor.**  The Easement Agreement depicts an easement crossing property identified as being owned by the Grubers and property identified as being owned by State Nursery.  There is a "Certificate of Land Owners," which states:  "We the undersigned property owners, hereby create this 60 foot emergency public access and utility easement; as shown by this exhibit."  Beneath this statement, three individuals are

17

identified as "Owner": Dean Mills, as President of State Nursery & Seed Company Inc.; Frank D. Gruber; and Bonita M. Gruber. Hence, it seems that State Nursery and the Grubers are the grantors.

¶29 Nelson points out, however, that the term "grantor" does not appear on the face of the Easement Agreement. Yet, the statute from which the four *Kuhlman* requirements derive does not require the use of any specific words. It states that "[a] grant of an estate in real property may be made *in substance* as follows . . . ." Section 70-20-103, MCA (emphasis added). Nelson's approach, requiring every conveyance of a property interest to include the word "grantor," elevates form over substance, and we reject it. A grantor is simply "[o]ne who conveys property to another," *Black's Law Dictionary* 707, and it is sufficiently clear from the depiction of the properties and the easement, the language of the Certificate of Land Owners, and the fact that the Grubers and State Nursery are identified as "owners" that they are the ones conveying a property interest to another.

¶30 Nelson also points out that the Easement Agreement does not identify the interests of Mountain West Bank and Syngenta Seeds (which have their own signature blocks). She argues that this creates uncertainty as to the identities of the grantors and the grantees. Yet, there is no language in the Easement Agreement indicating that Mountain West and Syngenta are conveying property to another or that property is being conveyed to them. The Easement Agreement shows a "60' Emergency Public Access & Utility Easement for: Broadwater Estates Major Subdivision." Whereas the Grubers and State Nursery are expressly identified as owners of the tracts over which the easement is depicted, Mountain West and Syngenta are not so identified. The inference readily

18

drawn from all this is that Mountain West and Syngenta are neither grantors nor grantees. The failure to specify their interests does not create the uncertainty Nelson claims. We conclude that the grantors are adequately identified as the Grubers and State Nursery.

¶31 **Language of conveyance.** An interest in real property can be "created, granted, assigned, surrendered, or declared." Section 70-20-101, MCA. Here, the Easement Agreement states: "We the undersigned property owners, *hereby create* this 60 foot emergency public access and utility *easement*, as shown by this exhibit" (emphases added). An easement is a nonpossessory interest in land that gives a person the right to use the land of another for a specific purpose. *Taylor v. Montana Power Co.*, 2002 MT 247, ¶ 11, 312 Mont. 134, 58 P.3d 162. Hence, the Grubers' and State Nursery's intent to convey a property interest over their properties is clear and unmistakable.

¶32 **Signatures.** The writing must be signed by the party creating, granting, assigning, surrendering, or declaring the interest in real property. Sections 70-20-101, -103, MCA. Here, the Easement Agreement is signed by the grantors: State Nursery and the Grubers. Nelson makes much of the fact that although there is a signature block for Syngenta, Syngenta did not sign the document. Yet, nothing in the Easement Agreement identifies Syngenta as an owner of the properties over which the easement is depicted, and Syngenta in fact was not an owner of the State Nursery property in July 2003 when the Easement Agreement was executed. Nelson presents no factual or legal basis for concluding that Syngenta's signature was essential to the creation of this easement.

¶33 **Identity of the grantee, and description of the property interest being conveyed.** As part of our analysis of the grantee's identity and the adequacy of the

19

property description, it is useful to begin by classifying the easement. Indeed, the parties' briefing reflects some confusion in this regard. As noted, an easement is a nonpossessory interest in the land of another. *Taylor*, ¶ 11. The interest may be "appurtenant" or "in gross." An easement appurtenant is one that benefits a particular parcel of land, i.e., it serves the owner of that land and passes with the title to that land. The benefited parcel is known as the dominant tenement or estate, and the burdened parcel is termed the servient tenement or estate. *Blazer*, ¶ 24. An easement in gross, by contrast, benefits the holder of the easement personally, i.e., not in connection with his or her ownership or use of a particular parcel of land. Thus, with an easement in gross, no dominant tenement exists and the easement right does not pass with the title to any land. *Blazer*, ¶ 24.

¶34 It is not always apparent whether an easement is appurtenant to a certain parcel of property or personal to a certain individual. Notably, § 70-17-101, MCA, lists a number of "servitudes upon land [that] may be attached to other land as incidents or appurtenances," while § 70-17-102, MCA, lists a number of "servitudes upon land [that] may be granted and held though not attached to land." But the servitude with which we are dealing here—the "right-of-way," i.e., the right to pass through property owned by another, *Black's Law Dictionary* 1326—is contained in both lists. *See* §§ 70-17-101(4), -102(5), MCA. Thus, in the absence of statutory direction, the determination of whether an expressly created easement is appurtenant or in gross necessarily depends on other considerations—in particular, the intention of the parties as ascertained from the language of the instrument and aided, if necessary, by the situation of the properties involved, the objective circumstances existing at the time of execution, and the purpose to be

20

accomplished by the easement. *See* Jon W. Bruce & James W. Ely, Jr., *The Law of Easements and Licenses in Land* § 2:3, 2-6 (2009) (hereinafter Bruce & Ely); *Westland Nursing Home v. Benson*, 517 P.2d 862, 865 (Colo. App. 1974); *McLaughlin v. Board of Selectmen of Amherst*, 664 N.E.2d 786, 790 (Mass. 1996); *Barrett v. Kunz*, 604 A.2d 1278, 1280 (Vt. 1992); *Pokorny v. Salas*, 81 P.3d 171, ¶ 24 (Wyo. 2003). The fact that the easement benefits the owner of a particular tract, adds to the enjoyment of another parcel, or is of no value unless used in connection with particular land suggests appurtenance. *See* Bruce & Ely § 2:3, 2-6 to 2-8; *Nelson v. Johnson*, 679 P.2d 662, 664 (Idaho 1984) (easement was appurtenant since it was "a beneficial and useful adjunct of the cattle ranch, and it would be of little use apart from the operations of the ranch"); *McLaughlin*, 664 N.E.2d at 789-90 (access and utility easement created for "the purposes for which public ways in the Town of Amherst are now or may hereafter be used" was appurtenant since it was reserved "for the benefit of other land of the grantor"); *Green v. Lupo*, 647 P.2d 51, 53-54 (Wash. App. Div. 2 1982) (grant of easement for ingress, egress, and utilities purposes to the owners of adjacent land indicates appurtenance); *cf. Mumaugh v. Diamond Lake Area Cable TV Co.*, 456 N.W.2d 425, 430 (Mich. App. 1990) (electric company's easement was in gross since it was not appurtenant to any estate in land, but was a personal interest to use the servient land for the erection and maintenance of a utility pole line); *Village of Walbridge v. Carroll*, 875 N.E.2d 144, ¶ 21 (Ohio App. 6th Dist. 2007) (easement was in gross since it did not benefit the Village's use of any particular land). Furthermore, if the granting instrument does not specify whether the easement is appurtenant or in gross, the court generally begins with the presumption that

21

it is appurtenant. *Luevano v. Group One*, 779 P.2d 552, 555 (N.M. App. 1989); *see also* Bruce & Ely § 2:3, 2-10 to 2-11 (noting the strong constructional preference for easements appurtenant over easements in gross); *Skeen v. Boyles*, 213 P.3d 531, ¶ 22 (N.M. App. 2009) (same); *Nelson*, 679 P.2d at 664-65 ("[I]n case of doubt, the weight of authority holds that the easement should be presumed appurtenant."); *United States v. Blackman*, 613 S.E.2d 442, 446 (Va. 2005) ("[A]n easement is 'never presumed to be in gross when it [can] fairly be construed to be appurtenant to land.' " (second brackets in *Blackman*)); *Green*, 647 P.2d at 54 ("There is a strong presumption in Washington that easements are appurtenant to some particular tract of land; personal easements, easements in gross, are not favored.").[4]

¶35    In the present case, the District Court concluded that "the Broadwater Estates Subdivision is the grantee" of the easement, thus suggesting an easement appurtenant. On appeal, Broadwater Development asserts on one hand that "the grant language in the [Easement Agreement] creates a servitude attached to land for the benefit of Broadwater Estates and the public," but on the other hand that "[t]he grant language in the [Easement Agreement] creates a servitude not attached to land for the benefit of the public." For its part, the County states that it "support[s]" Broadwater Development's arguments but is

---

[4] Some rationales for this presumption are that "[c]onstruing doubtful easements as easements in gross would allow assignment of the easement to strangers to the area who could then control the use of the property. Such construction could also result in increased burdens on land beyond that contemplated by the original grantor." *Luevano*, 779 P.2d at 556. Thus, "[a]t common law, easements in gross were strongly disfavored because they were viewed as interfering with the free use of land." *Blackman*, 613 S.E.2d at 446. The preference for easements appurtenant also "reflects the traditional suspicion of easements in gross as interests that burden one parcel of land without providing a corresponding benefit to another parcel." Bruce & Ely § 2:3, 2-11.

limiting its own arguments to "the public's interest" in the easement. The County then argues that the "public" is a grantee of the easement and that "[t]he public's easement is an easement in gross."

¶36    Nelson, however, suggests that we cannot know what sort of easement is being created because the Easement Agreement utterly fails to identify the grantee and the dominant tenement. In addition, she correctly points out that a landowner cannot hold an easement in the landowner's own property. *See* § 70-17-105, MCA ("A servitude thereon cannot be held by the owner of the servient tenement."). If the owner of two parcels attempts to create an express easement over one of the parcels in favor of the other, the purported interest is a nullity; at most, the servitude exists only momentarily before merging into the fee. *See* Bruce & Ely § 3:11, 3-34 & n. 4; *One Harbor Financial Ltd. v. Hynes Properties*, 884 So. 2d 1039, 1044 (Fla. 5th Dist. App. 2004). This rule "proceeds from the rationale that a person does not need an easement in his or her own land, because all the uses of an easement are already included in the general right of fee ownership." *Beyer v. Tahoe Sands Resort*, 29 Cal. Rptr. 3d 561, 571 (Cal. App. 3d Dist. 2005). Here, when the Easement Agreement was executed, the Grubers owned both the Gruber parcel and the land making up the Broadwater Estates Major Subdivision. Thus, Nelson suggests that the Easement Agreement could not have created an easement over the Gruber parcel in favor of the subdivision.

¶37    Whether or not this is true, however, is not something we need to resolve here. This lawsuit was filed to determine the validity of the easement over *the State Nursery property* to which Nelson is a successor. Even assuming, for the sake of argument, that

the Easement Agreement could not have created an easement over the Gruber parcel in favor of the subdivision, this does not mean that the entire 60-foot easement is void. Our focus is on what Dean Mills (President of State Nursery) intended when executing the Easement Agreement. Viewing the Easement Agreement from Mills' perspective, we first observe that the easement bears indicia of both an easement appurtenant and an easement in gross. On one hand, the document states that the easement is "for: Broadwater Estates Major Subdivision," which could indicate an easement appurtenant. On the other hand, the document states that the easement is for "emergency public access and utility" purposes, which could indicate an easement held by the public and utility providers personally, i.e., not in connection with their ownership of any particular land. In Nelson's view, the existence of these two possibilities precludes summary judgment for Broadwater Development and the County, and she criticizes the District Court for "cobbl[ing] together" various parts of the Easement Agreement. Yet, as noted, the whole of a contract is to be taken together so as to give effect to every part if reasonably practicable, each clause helping to interpret the other. Section 28-3-202, MCA. Doing so here, we conclude that notwithstanding the presumption of appurtenance, the terms "public" and "utility" as used in the Easement Agreement clearly indicate an intention by Mills to grant an easement in gross—i.e., an easement in favor of the public and utility providers personally. We further conclude that the "for: Broadwater Estates Major Subdivision" language was intended to limit the easement's scope, such that members of the public may use it to travel between Broadwater Estates Major Subdivision and Highway 12 in emergency situations and utility providers may use it to provide utilities

24

specifically to the subdivision. Thus, insofar as the State Nursery property is concerned, the grantees of this easement are the public and utility providers.

¶38 As for the property description, an instrument of conveyance must adequately describe the property interest being created. *See Kuhlman*, 216 Mont. at 359, 701 P.2d at 985. More specifically, with respect to an easement, the identities of the dominant and servient tenements must be ascertainable with reasonable certainty and the owner of the property burdened by the easement should have knowledge of its use or its necessity. *See Blazer*, ¶ 51. Here, the easement is depicted on the face of the Easement Agreement and is described in metes and bounds. It is labeled "60' Emergency Public Access & Utility Ease.," and because it is in gross, there is no dominant tenement. It is shown crossing property identified as being owned by the Grubers and property identified as being owned by State Nursery, which are the servient tenements. It is shown connecting with an "Existing 60' Easement" at its west end and Highway 12 at its east end—and for this reason, Nelson's analogy to *Blazer* is unpersuasive. Unlike the *Blazer* easement, which ran off the certificate of survey with no identifiable destination, the full extent of the present easement is shown on the Easement Agreement. Consequently, a person looking at the document is not left wondering, "Where does this go, who gets to use it, and for what purpose?" It runs from an existing 60-foot easement to Highway 12; it is for emergency public access and utility purposes connected with Broadwater Estates Major Subdivision; and it may be used by individuals and entities engaged in such purposes.

¶39 Nelson points out that the subdivision had received only preliminary approval when the Easement Agreement was executed in July 2003; however, she provides no

factual or legal basis for concluding that an easement in gross could be granted to the public and utility providers only after the subdivision had received *final* approval. Nelson also asserts that the Easement Agreement does not impart sufficient knowledge of the easement's use and necessity because it does not disclose "the number of emergencies that need to be accommodated and the extent of the improvements required to serve the emergencies." Our cases, however, do not require this degree of specificity in order to create an easement. Moreover, while it seems that Nelson would have us believe that she had no way of knowing the purpose and nature of this easement when she obtained the State Nursery property, we are not persuaded. The Easement Agreement imparts sufficient knowledge of the easement's use and necessity.

¶40 **Conclusion.** The Easement Agreement satisfies the formal requirements for expressly granting an easement. While Nelson attempts to make this into a *Blazer* case, we disagree that this is an easement-by-reference situation or that the principles articulated in *Blazer* require the instant easement to fail. We accordingly affirm the District Court's conclusion that the "60' Emergency Public Access & Utility Easement" is a valid and enforceable express easement.

¶41 *Issue 3. Did the County fail to accept the easement?*

¶42 Citing § 7-14-2101(2)(b), MCA (which defines "county road"), Nelson contends that the easement cannot be in favor of the public because the County has not "accepted" it. In response, the County disagrees that it is required to comply with this statute before a public easement may come into existence. The County notes that " 'a public easement is not the equivalent of a county road' " (quoting *Pedersen v. Dawson County*, 2000 MT

26

339, ¶ 23, 303 Mont. 158, 17 P.3d 393). Moreover, the County maintains that, in any event, it did "accept" the easement, whether pursuant to the statute or under the doctrine of common law dedication (*see Heller v. Gremaux*, 2002 MT 199, ¶ 19, 311 Mont. 178, 53 P.3d 1259). Specifically, the County points out that it *required* the easement to be created as a condition of final subdivision approval.

¶43 Nelson cites no authority for the proposition that a "public easement" (as we have here), as opposed to a "county road," requires compliance with § 7-14-2101(2)(b), MCA. She also fails to respond, with a properly developed argument including citations to authority, to the County's assertions regarding common law dedication. For that matter, the County's arguments also are rather scant on authority. It is not this Court's job to conduct legal research on a party's behalf or to develop legal analysis that may lend support to the position the party advances. *State v. White*, 2008 MT 464, ¶ 29, 348 Mont. 196, 199 P.3d 274; *see also* M. R. App. P. 12(1)f., 12(2). Under these circumstances, we will not address this issue further.

## CONCLUSION

¶44 The Easement Agreement created a 60-foot emergency public access and utility easement, which is enforceable against Nelson. The easement is in gross, and it may be used by members of the public to travel between Broadwater Estates Major Subdivision and Highway 12 in emergency situations and by utility providers to provide utilities to the subdivision. Broadwater Development and the County have shown that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law.

27

¶45   Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ MIKE McGRATH
/S/ BRIAN MORRIS
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE



# 60' EMERGENCY PUBLIC ACCESS & UTILITY EASEMENT
## FOR: BROADWATER ESTATES MAJOR SUBDIVISION