FILED

10/04/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0102

DA 16-0102

## IN THE SUPREME COURT OF THE STATE OF MONTANA

### 2016 MT 251N

BEVILL LIMITED PARTNERSHIP,

      Plaintiff and Appellee,

  v.

GREGORY P. SANDBERG,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DV 14-1169A
Honorable Katherine R. Curtis, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Brian M. Joos, Viscomi & Gersh, PLLP, Whitefish, Montana

      For Appellee:

          Sean S. Frampton, Johnna J. Preble, Morrison & Frampton, PLLP,
Whitefish, Montana

Submitted on Briefs:  September 7, 2016

Decided:  October 4, 2016

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     Bevill Limited Partnership (Bevill) and Gregory Sandberg dispute the enforceability and effect of an easement burdening Bevill's property. The parties own adjacent parcels of real property in Whitefish, Montana. A boundary line adjustment in July 2003 made Sandberg's property inaccessible from Colorado Avenue. In September 2003, Bevill's predecessor in interest executed a fifty-foot private access and utility easement (the Easement) in favor of Sandberg's predecessor in interest. The Easement allowed Sandberg's predecessor to access his property and also entitled Bevill's predecessor to use the Easement for access and utilities. The parties concurrently entered into a written agreement (the Agreement) imposing certain restrictions on Bevill's property. The Agreement provides, in pertinent part:

> For valuable consideration, receipt of which is hereby acknowledged, [Bevill's predecessor in interest] agrees to impose the following terms and restrictions on [Bevill's] PROPERTY and hereby grants [Sandberg's predecessor in interest] a negative easement, pursuant to which [Bevill's predecessor in interest] agrees that he, and his successors in interest, (a) shall not construct any structures, buildings, or any other improvements, including but not limited to parking lots, parking areas, or driveways, on that portion of [Bevill's] PROPERTY that is shown as cross-hatched on "Exhibit A," attached hereto and incorporated herein by reference, (b) shall obtain primary vehicular access to the units to be constructed on [Bevill's]

2

PROPERTY directly from Colorado Avenue, and shall use the 50'
PRIVATE ACCESS & UTILITY EASEMENT (shown on Exhibit "A")
only for occasional and limited vehicular access to that portion of [Bevill's]
PROPERTY located east of such units."

The referenced "Exhibit A" is a map of the property that shows the Easement and the restricted area of development.

¶3     Bevill's predecessor later subdivided the property into five lots. Four of the lots had direct access to Colorado Avenue. Bevill's predecessor could access the fifth lot (the Open Area) only by means of the access road through the Easement. Bevill's predecessor acquired additional property, which was combined with the Open Area and accessible only by the access road.

¶4     In 2010, Bevill purchased the Open Area. Three years later, Bevill applied with the City of Whitefish to subdivide the property. The City conditioned approval of Bevill's application, in part, on Bevill granting the City an access and utility easement that would open the access road on the Easement to the public. Bevill granted the City the access easement and the City approved Bevill's application. The access road through the Easement therefore became open to the public.

¶5     In November 2014, Bevill filed a declaratory judgment action regarding the validity and enforceability of the restriction under the Agreement's subpart (b). Bevill filed a motion for summary judgment, which the District Court granted. The court noted that the parties did not dispute that the access road through the Easement was open to the public. Consequently, the court framed the issue as "to what extent the restriction on Bevill's use of the 50-foot access road can survive a clear designation of the roadway as

3

open to the public, for use by anyone and everyone without restriction." Because the establishment of the public road granted members of the public—including Bevill—an "unrestricted right to travel upon the road," the court concluded that it could not enforce the restriction on Bevill's use of the Easement under the Agreement. The court also rejected Sandberg's argument that subpart (b) of the Agreement prohibited Bevill from developing the property. The court's order did not affect subpart (a) of the Agreement. Sandberg appeals.

¶6 We review an entry of summary judgment de novo, applying the criteria set forth in M. R. Civ. P. 56(c)(3). *Broadwater Dev., L.L.C. v. Nelson*, 2009 MT 317, ¶ 15, 352 Mont. 401, 219 P.3d 492. Where the material facts are undisputed, the court must identify the applicable law, apply it to the uncontroverted facts, and determine who prevails. *Broadwater Dev., L.L.C.*, ¶ 15. The construction of a writing granting an interest in real property is governed by the rules of contract interpretation. *Broadwater Dev., L.L.C.*, ¶ 19. The interpretation of a contract is a question of law that we review for correctness. *Hurly v. Lake Cabin Dev., LLC*, 2012 MT 77, ¶ 14, 364 Mont. 425, 276 P.3d 854.

¶7 Sandberg does not dispute that the access road through the Easement is open to the public. Given this, we must apply our rules of contract interpretation to determine the effect and enforceability of subpart (b) of the Agreement. *See Broadwater Dev., L.L.C.*, ¶ 15. Subpart (b) provides, in pertinent part, that Bevill "shall use the [Easement] only for occasional and limited vehicular access to that portion of [Bevill's] PROPERTY

4

located east" of the four lots with direct access to Colorado Avenue. Despite this language, Sandberg did not object to the public easement and does not challenge public use of the roadway. Rather, Sandberg alleges that subpart (b) restricts construction and development because it restricts where and how a person may gain access into the property after traveling upon the public roadway. He claims, therefore, that the provision restricts the property and not the roadway.

¶8 Subpart (b)'s words—which must be "understood in their ordinary and popular sense" pursuant to § 28-3-501, MCA—clearly pertain to use of the Easement to access Bevill's property. Given the plain language of subpart (b), Sandberg's assertion that it restricts "development and construction" on Bevill's property adds language to the Agreement in conflict with our rules of contract interpretation. Section 1-4-101, MCA ("In the construction of an instrument, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted."). "[I]t is not the proper role of the judiciary to insert modifying language into clearly written and unambiguous instruments where the parties to the instrument declined to do so." *Creveling v. Ingold*, 2006 MT 57, ¶ 12, 331 Mont. 322, 132 P.3d 531.

¶9 The language of subpart (a)—which restricts the construction of "any structures, buildings, or any other improvements, including but not limited to parking lots, parking areas, or driveways, on that portion of [Bevill's] PROPERTY that is shown as cross-hatched on 'Exhibit A'"—establishes clearly that the parties restricted development

5

only with regard to the portion of Bevill's property marked on the attached map. We must "give effect to the mutual intention of the parties" who entered into the Agreement. Section 28-3-301, MCA. Moreover, subpart (a) "help[s] to interpret" subpart (b) because it demonstrates that the parties understood how to set forth development restrictions in the Agreement where they intended to do so. Section 28-3-202, MCA.

¶10 The District Court correctly interpreted subpart (b) of the Agreement as a restriction on use of the Easement, and not as a restriction on Bevill's right to develop the remainder of his property not restricted under subpart (a). Accordingly, we conclude that the District Court properly granted Bevill judgment as a matter of law regarding the enforceability and effect of subpart (b) of the Agreement. We therefore decline to address Sandberg's other arguments on appeal.

¶11 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by the applicable standards of review and does not establish any new precedent or modify existing precedent. We affirm the District Court's order granting Bevill summary judgment.


/S/ BETH BAKER

We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON