JUSTICE WHEAT,
dissenting.
¶23 I dissent from the Court’s decision to reverse and remand the District Court’s Final Order and Judgment. I conclude the District Court correctly ruled the City failed to pay Officers’ wages and benefits, including longevity pay, in accordance with the applicable collective bargaining agreements between the City and the Union; therefore, I would affirm.
¶24 The majority opinion addresses a single issue: whether the District Court erred by holding that the CBAs were unambiguous and excluding extrinsic evidence concerning interpretation of those agreements. The Court contends that while the District Court ruled the CBAs were unambiguous, it nonetheless cited and relied upon extrinsic evidence beneficial to the Officers but excluded extrinsic evidence presented by the City. The Court holds that this was an error of law. I conclude that one of the three examples of the District Court’s purported use of extrinsic evidence set forth in the Court’s majority opinion, the example pertaining to scrivener’s error, was appropriate. I further conclude the other two examples did not constitute inadmissible extrinsic evidence.
¶25 Extrinsic, or parol, evidence is evidence relating to a contract but not appearing on the face of the contract because it comes from other sources, such as statements between the parties, depositions, correspondence, or the circumstances surrounding the agreement. It is generally not admissible to contradict or add to the terms of an unambiguous contract. Black’s Law Dictionary 675 (Bryan A. Garner ed., 10th ed. 2014). In other words, as noted above in ¶ 16, if a contract *386 is clear and unambiguous, the court must apply the language as written and may not look to extrinsic evidence to interpret the language or determine the intent of the parties. Kuhr, ¶ 18; Hanson v. Water Ski Mania Estates, 2005 MT 47, ¶ 14, 326 Mont. 154, 108 P.3d 481.
¶26 Here, the Court faults the District Court for considering extrinsic evidence regarding the formula used to calculate longevity pay for Officers. Beginning in 1994, the City and the Union negotiated CBAs containing a formula developed to calculate the amount of longevity pay to be added to the Billings police officers’ hourly pay. Since 1994, the formula consistently contained two fractional multipliers (.45 and .01), but the remaining factors were less consistent. For example, the 1994-1997 CBA used the hourly rate of an officer at the beginning of year one (referenced as PD1) multiplied by the years of service. Consequently, the formula read: .45 x .01 x the hourly rate of PD1 x years of service. The 1997-2000 CBAs used the hourly rate of an officer at the beginning of year two; as a result, the formula was: .45 x .01 x the hourly rate of PD2 x years of service. In the subsequent and applicable CBAs, discussed below, the City again revised the formula factors.
¶27 As noted in ¶ 2 of the majority opinion, the three CBAs relevant to this case spanned the time periods of July 1, 2000-June 30, 2003 (CBA I), July 1, 2003-June 30, 2006 (CBA II), and July 1, 2006-June 30, 2009 (CBA III). The longevity clauses in each of these CBAs read:
CBA I: Longevity shall be added to each officer’s hourly rate based upon the following formula: .45 x .01 x the hourly rate of an officer at the beginning of year 1 x years of service.
CBAs II and III: Beginning July 1,2003,[1] longevity shall be added to each officer’s hourly rate based upon the following formula:
.45 x .01 x the hourly rate of an officer from year 1 to 15 years of service.
.50 x .01 x the hourly rate of an officer after year 15.
¶28 As is readily apparent when reading these clauses, CBAs II and III do not reference that longevity must be calculated based upon the hourly rate of an officer “at the beginning of year 1.” Nor do the two latter CBAs include “years of service” as a critical and statutorily-required multiplier. Section 7-32-4116, MCA, addressing minimum wage and longevity pay of police in first- and second-class cities, states:
*387 (1) Each duly confirmed member of a police department of cities of the first and second class of Montana is entitled to a minimum wage for a daily service of 8 hours’ work of at least $ 750 per month for the first year of service and thereafter at least $ 750 a month plus 1% of the minimum base monthly salary of $ 750 for each additional year of service up to and including the 20th year of additional service.

(3) Added salary for years of service will be based on the base monthly salary as established in this section and not on the actual current salary.
¶29 The City testified that the omissions in CBAs II and III were inadvertent[2] and the City continued to calculate and pay longevity in the same manner it had done under CBA I, using an officer’s base rate pay during his or her first year of service and multiplying it by the number of years the officer had served. Accepting this undisputed testimony, the District Court, then-presiding Judge Swandal, noted in its March 8, 2011 order that these omissions were scrivener’s errors and reformed CBAs II and III accordingly. Subsequently, Judge Gilbert, presiding over the case following Judge Swandal’s retirement, incorporated reference to this scrivener’s error in the court’s January 28, 2016 Findings of Fact, Conclusions of Law and Order.
¶30 The City now appears to argue on appeal that the District Court erred by accepting its repeated admission that CBAs II and III failed to include “at the beginning of year 1” and “years of service” in its longevity formula. In admitting this inadvertent omission, the City also informed the District Court that its absence did not affect the manner in which it calculated officer longevity and that it performed under CBAs II and III as it had under CBA I, using the omitted factors as before. By admitting that it continued calculating longevity as it had under CBA I, the City was also admitting that the absence of the formula factors did not render CBAs II and III ambiguous from its perspective. Consequently, informed that the omissions had no effect on the City’s performance, the District Court concluded it was a scrivener’s error and incorporated the “corrected” formula into its July 8, 2011 order. The City did not object to the order and later praised *388 Judge Swandal’s manifest and correct understanding of the CBAs.
¶31 Subsequently, in December 2013, the City began arguing the meaning of “years of service,” asserting it actually meant “years of completed service.” As such, the City now argues that the District Court erred by reforming CBAs II and III based upon extrinsic evidence, i.e., its admissions of inadvertent error as it pertains to the longevity formulas in CBAs II and III. The City claims the court did not err by adding the omitted language but that it erred by not attributing the City’s meaning of the omitted language. This argument should not be well taken. The District Court concluded the language of CBA I was unambiguous. Inserting the identical language into CBAs II and III did not render those agreements ambiguous. “It has long been the rule of this Court that on appeal we will not put a district court in error for a ruling or procedure in which the appellant acquiesced, participated, or to which appellant made no objection.” State v. Daniels, 2017 MT 163, ¶ 34, 388 Mont. 89, 397 P.3d 460.
¶32 The second reference to extrinsic evidence noted in the Court’s majority opinion is the court’s factual finding regarding the first date upon which the City historically calculated longevity. Finding of Fact No. 17 states:
The City’s handling of the longevity formula has not been consistent. Historically, the City calculated longevity beginning on day one of year one. However, at times, the City computed longevity beginning in year two, as it now argues is proper. This inconsistent calculation of longevity was detailed in a Memo sent to Karla Stanton by a computer specialist employed by the City.
¶33 The Court notes that the City claims the memo does not exist; however, the existence or lack thereof of the memo is not decisive. The District Court heard testimony that the City’s payment of longevity pay was inconsistent but ruled that the unambiguous language of the CBA required the City to pay past due longevity calculated “at the beginning of year one” in accordance with the plain language of the CBAs. The District Court’s reference to evidence revealing the City’s inconsistency was not an improper reliance on extrinsic evidence as it was not used to interpret the agreement or determine the parties’ intent. Rather, it was an acknowledgment that the City was not calculating longevity in the manner required by the applicable CBAs.
¶34 Notably, the District Court has twice ruled that the applicable CBAs dictate that longevity pay begins on an officer’s first day of employment and not after a completed year of service. The District Court first concluded this in its July 8,2011 order. At that time, Judge Swandal was tasked with ruling on Watters’ motion for partial *389 summary judgment in which Watters argued the City failed to add longevity payments to each officers’ base hourly rate; rather, the City erroneously paid longevity as a separate, stand-alone payment. This stand-alone method resulted in the underpayments of longevity benefits. Judge Swandal concluded that the language of the CBAs unequivocally required the City to add longevity payments to each officers’ hourly rate. While the parties had not yet raised the issue of the meaning of “years of service,” the court set forth the following example, applying the formula to “an officer who is in his 11th year of service”: .45 x .01 x $10.8898 x 11 = .539. In this example, by using eleven years of service before the officer had completed the eleventh year of service, the District Court interpreted the CBA to provide instant longevity. As noted above, the City did not object to the court’s interpretation at that time and later lauded the District Court’s “straightforward example.” It was not until December 2013 that the City asserted that “years of service” meant “years of completed service” and that neither the City nor the Union intended the City to pay instant longevity.
¶35 Subsequently, in January 2016, the District Court, Judge Gilbert presiding, issued its Findings of Fact, Conclusions of Law and Order and determined, as did Judge Swandal, that under CBAs I-III, longevity pay began “in an officer’s first year of service.”
¶36 Lastly, the District Court’s third reference to extrinsic evidence, as pointed out in the majority opinion, is the District Court’s reference to the July 1, 2009-June 30, 2012, CBA between the Officers and the City. In this collective bargaining agreement, drafted as the case before us was proceeding, the “years of service” longevity pay factor was revised to expressly state “years of completed service.” Again, the court’s review of the 2009-2012 CBA was not intended to obtain evidence to aid in the interpretation of the earlier CBAs, or determine the intention of the parties. It was referenced to illustrate that the City was capable of drafting an agreement that clearly stated its intention to calculate and pay longevity benefits based upon years of completed service. Moreover, the District Court’s observation of the change in the 2009 CBA went to the City’s credibility, rather than to contract interpretation.
¶37 It is well-established that courts must enforce written contracts as written and not insert what has been omitted or omit what has been inserted. Section 1-4-101, MCA. Additionally, “[ejvidence of surrounding circumstances may not be used to add to, vary, or contradict the terms of the contract. Nor may extrinsic evidence be used ... to show an intention independent of the instrument.” *390 Broadwater Dev., L.L.C. v. Nelson, 2009 MT 317, ¶ 21, 352 Mont. 401, 219 P.3d 492 (internal citations omitted).
¶38 In this case, the District Court concluded that CBA I was unambiguous and clearly stated that longevity was to be added to an officer’s hourly rate at the beginning of year one. The court subsequently reformed CBAs II and III based upon the City’s testimony that it erroneously omitted reference to an officer’s hourly rate at the beginning of year one x years of service. After reformation based upon admitted scrivener’s error, the three CBAs clearly stated that an officer’s longevity pay was to be calculated “at the beginning of year 1.” The City has ample experience in drafting CBAs with its fire and police providers as reflected in the 1997-2000 CBA in which the City based longevity upon the hourly rate of an officer at the beginning of his or her second year of service and the 2009-2012 CBA draft expressly stating that calculation of longevity was based upon years of completed service. While the City strenuously argues against the court’s interpretation, the District Court and this Court must interpret the language in the contract before it.
¶39 Additionally, I believe the Court is remiss in failing to address other issues raised by the parties on appeal. Those issues, including but not limited to the proper statute of limitations, the appropriate class members based upon accrual date, and certain damage awards, are likely to be raised and/or challenged in the subsequent proceeding on remand and may very well be subject to a subsequent appeal. As these issues are currently before this Court, they should be resolved prior to remand.
¶40 I conclude the Court’s majority improperly put the District Court in error for accepting extrinsic evidence to appropriately reform CBAs II and III based upon admissions of inadvertence. I further conclude the “extrinsic” evidence the majority asserts the District Court relied upon, i.e., the City’s inconsistent payment of longevity pay and the court’s reference to the 2009 CBA, was not extrinsic evidence in that the court did not rely upon it to assist in interpreting the plain language of the CBAs or to discern the intent of the parties. Lastly, I conclude the District Court correctly interpreted the plain language of the contract and refused to accept contradicting extrinsic evidence. I dissent from the Court’s decision to reverse.
CHIEF JUSTICE McGRATH joins the Dissent of JUSTICE WHEAT.

 It appears the drafter of CBA III failed to change the operable date in the longevity clause to July 1, 2006, as CBA III continues to read “Beginning July 1, 2003.”

 As testified to by the City, the corrected formula in CBAs II and III would read:
.45 x .01 x the hourly rate of an officer at the beginning of year 1 x years of service from year 1 to 15 years of service. .50 x .01 x the hourly rate of an officer at the beginning of year 1 x years of service after year 15 of service.